No. _____

---

# In the United States Court of Appeals for the Federal Circuit

IN RE: CHARTER COMMUNICATIONS, INC.,

*Petitioner.*

On Petition for a Writ of Mandamus to the
United States District Court for the Eastern District of Texas
Case No. 22-CV-0125
Hon. Rodney Gilstrap, United States District Judge

## PETITION FOR A WRIT OF MANDAMUS

Daniel Reisner
Elizabeth Long
Melissa Brown
**Arnold & Porter Kaye Scholer LLP**
250 West 55th Street
New York, New York 10019
Tel.: (212) 836-8000
Fax: (212) 836-8689

June 16, 2023

*Attorneys for Petitioner
Charter Communications, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---:|:---|
| **Case Number** | |
| **Short Case Caption** | In re Charter Communications, Inc. |
| **Filing Party/Entity** | Charter Communications, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/16/2023

Signature: /s/ Daniel Reisner

Name: Daniel Reisner

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Charter Communications, Inc. | | Liberty Broadband Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| David Benyacar<br>(Arnold & Porter) | Albert Boardman<br>(Arnold & Porter) | Deron R. Dacus<br>(The Dacus Firm, PC) |
| Amy L. DeWitt<br>(Arnold & Porter) | Michael Lynn<br>(Arnold & Porter) | Palak M. Parikh<br>(Arnold & Porter) |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑  Yes (file separate notice; see below)   ☐  No   ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## NOTICE OF RELATED CASE INFORMATION

| | |
|---|---|
| **Case Number** | |
| **Short Case Caption** | In re Charter Communications, Inc. |
| **Filing Party/Entity** | Charter Communications, Inc. |

**Instructions:** Do not duplicate information.  The notice must only be filed at the time of filing the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  *See* Fed. Cir. R. 47.5(b).  Attach additional pages as needed.  This notice must not be included in a motion, petition, related response, or brief; please only include the Certificate of Interest (Form 9) in those documents.

1.  **Related or prior cases.** Provide the case title, case number, and originating tribunal for each case.  Fed. Cir. R. 47.5(b)(1).

Entropic Comms., LLC v. Charter Comms., Inc., No. 2:23-CV-00050-JRG (E.D. Tex.)

Entropic Comms., LLC v. Charter Comms., Inc., 2:23-CV-00051-JRG (E.D. Tex.)

Entropic Comms., LLC v. Charter Comms., Inc., 2:23-CV-00052-JRG (E.D. Tex.)

Touchstream Technologies, Inc. v. Charter Comms., Inc., et al., 2:23-cv-00059-JRG (consolidated member case of lead case 23-cv-00060) (E.D. Tex.)

☐   Additional pages attached

**FORM 9A. Notice of Related Case Information**

2. **Names of all parties involved in the cases listed above.** Do not duplicate the names of parties. Do not relist the case information. Fed. Cir. R. 47.5(b)(2)(A).

Charter Communications, Inc.

Entropic Communications, LLC

Touchstream Technologies, Inc.

☐    Additional pages attached

3. **Names of all law firms, partners, and associates in the cases listed above.** Do not duplicate the names of law firms, partners, and associates. Do not relist case information and party names. Fed. Cir. R. 47.5(b)(2)(B).

Arnold & Porter Kaye Scholer LLP (David Benyacar, Albert Boardman, Melissa Brown, Amy L. DeWitt, Dina Hayes, Elizabeth Long, Daniel Reisner, Robert Stout)

Winston & Strawn (Krishnan Padmanabhan, Saranya Raghavan)

The Dacus Firm, PC (Deron R. Dacus)

Shook Hardy & Bacon LLP (Michael W. Gray)

K&L Gates, LLP (James A Engel, Darlene Ghavimi, George Summerfield, James A. Shimota, Melissa Haulcomb, Peter Soskin)

Ward, Smith & Hill, PLLC (Andra L. Fair, Jack Wesley Hill)

Bridges IP Consulting (Kenneth H. Bridges)

☐    Additional pages attached

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/16/2023

Signature:    /s/ Daniel Reisner

Name:    Daniel Reisner

# TABLE OF CONTENTS

**Page**

I. RELIEF SOUGHT ..........................................................................1

II. ISSUES PRESENTED .................................................................1

III. FACTS NECESSARY TO UNDERSTAND THE ISSUES
PRESENTED ..................................................................................1

    A. Introduction ....................................................................1

    B. CCI Maintains Corporate Separateness From the LLCs......................5

    C. CCI Is The Manager of The Limited Liability Companies...................7

    D. CCI Does Not Have Any Employees And Does Not Own or
Lease, or Maintain and Operate, Property In The District...................9

    E. CCI Does Not Reside or Have a Physical Presence In The District...10

    F. Procedural History.................................................................11

IV. REASONS THE WRIT SHOULD ISSUE....................................................12

    A. The Right To A Writ Is Clear And Indisputable................................13

        1. The District Court Relied On an Erroneous Standard and
Erroneous Factual Findings To Impute the Presence Of
Spectrum Gulf To CCI.............................................................13

        2. The District Court Relied On Erroneous Factual and Legal
Conclusions, and Misapplied the *Cray* Factors, To Find CCI
Has a Regular and Established Place Of Business In the
District.....................................................................................19

            (a) CCI Does Not Have a "Place Of Business" In the
District ...........................................................................20

            (b) CCI Has No Employees or Agents Conducting
Business in the District.................................................21

            (c) CCI Has No Place of Business in the District...............27

     B.     The Other Mandamus Factors Are Satisfied ........................................31

V.     CONCLUSION ..............................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Andra Group, L.P. v. Victoria's Secret Stores, LLC.*,
   6 F.4th 1283 (Fed. Cir. 2021) .......................................................................*passim*

*Bd. Of Regents v. Medtronic PLC*,
   17-cv-0942, 2018 WL 4179080 (W.D. Tex. July 19, 2018) ...............................4

*Celgene Corporation v. Mylan Pharmaceuticals Inc.*,
   17 F.4th 1111 (Fed. Cir. 2021) ....................................................................*passim*

*Cheney v. U.S. Dist. Ct. for D.C.*,
   542 U.S. 367 (2004)...............................................................................12, 13

*Entropic Comms., LLC v. Charter Comms., Inc.*,
   2:23-cv-00050-JRG (E.D. Tex.) ...........................................................................12

*Entropic Comms., LLC v. Charter Comms., Inc.*,
   2:23-cv-00051-JRG (E.D. Tex.) ...........................................................................12

*Entropic Comms., LLC v. Charter Comms., Inc.*,
   2:23-cv-00052-JRG (E.D. Tex.) ...........................................................................12

*Entropic Communications LLC v. DIRECTV, LLC*,
   22-cv-00076-JRG, 2022 WL 19076758 (E.D. Tex. Oct. 24, 2022)........3, 20, 26

*In re Cray*,
   871 F.3d 1355 (Fed. Cir. 2017) .................................................................*passim*

*In re EMC Corp.*,
   677 F.3d 1351 (Fed. Cir. 2012) ........................................................................13

*In re Google LLC*,
   949 F.3d 1138 (Fed. Cir. 2020) .......................................................21, 22, 26, 31

*In re Volkswagen of Am. Inc.*,
   545 F.3d 304 (Fed. Cir. 2008) .....................................................................13, 31

*In re ZTE (USA) Inc.*,
   890 F.3d 1008, 1015 (Fed. Cir. 2018) ...............................................................29

*Interactive Toybox, LLC v. The Walt Disney Co.*,
　17-cv-1137, 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018) ...................3, 16, 21

*IPVX Patent Holdings, Inc. v. Broadvox Holding Co., LLC*,
　11-cv-0575, 2012 WL 13012617 (E.D. Tex. Sept. 26, 2012) .......................5, 18

*Jacoby Donner, P.C. v. Aristone Realty Cap., LLC*,
　17-cv-2206, 2020 WL 5095499 (E.D. Pa. Aug. 28, 2020)..............................8, 9

*Nat'l Steel Car Ltd. v. The Greenbrier Cos., Inc.*,
　19-cv-00721, 2020 WL 42889388 (W.D. Tex. July 27, 2020) .....................4, 15

*Parallel Network Licensing LLC v. Arrow Elecs., Inc.*,
　21-cv-0714, 2022 WL 1597364 (E.D. Tex. May 19, 2022)..............................17

*Soverain IP, LLC v. AT&T, Inc.*,
　No. 2:17-cv-0293, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017) .............*passim*

*United States v. Bestfoods*,
　524 U.S. 51 (1998)...............................................................................................30

## Statutes

28 U.S.C. § 1400(b) ........................................................................................*passim*

Del. Code Ann. tit. 6, §§ 18-101, *et seq.* ...................................................................8

Del. Code Ann. tit. 6, § 18-402..............................................................................18

Delaware LLC Act .......................................................................................*passim*

## Other Authorities

Federal Rule of Civil Procedure 12(b)(3) ......................................................1, 11, 12

## I.    <u>RELIEF SOUGHT</u>

Petitioner Charter Communications, Inc. ("CCI") respectfully seeks a writ of mandamus directing the District Court for the Eastern District of Texas to dismiss the case for improper venue pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(3).

## II.    <u>ISSUES PRESENTED</u>

1.    Whether the district court misstated the applicable legal standard for imputation and reached a patently erroneous result when it found that venue under 28 U.S.C. § 1400(b) was proper in the Eastern District of Texas solely on the basis that a separate and distinct subsidiary and its parent "act[ed] as a single enterprise."

2.    Whether the district court reached a patently erroneous result and abused its discretion by misapplying the law to the facts and commingling concepts of agency, ratification and imputation under *In re Cray*, 871 F.3d 1355 (Fed. Cir. 2017), contrary to this Court's precedents, to conclude that a parent company has a regular and established place of business in the district based on the presence of a subsidiary in the district.

## III.    <u>FACTS NECESSARY TO UNDERSTAND THE ISSUES PRESENTED</u>

### A.    <u>Introduction</u>

CCI seeks mandamus relief to review the application and interpretation of the patent venue statute by a district court in the Eastern District of Texas.  CCI is a holding company, is not incorporated in Texas, and does not own or lease property,

does not offer any products or services, and does not have any employees in the district. It is the ultimate parent over numerous subsidiary limited liability companies ("the LLCs" or "LLC subsidiaries"), each of which performs specific business functions in support of the Spectrum brand. Spectrum Gulf Coast, LLC ("Spectrum Gulf") is a separate and distinct LLC subsidiary that leases or owns and maintains and operates four Spectrum-brand stores in the district, and is the LLC that provides internet and video services under the Spectrum brand to customers in the district. CCI maintains all corporate formalities as a parent and as a manager of the LLCs, including Spectrum Gulf, under the Delaware LLC Act. It has not ratified any location in the district as its own, nor are the employees of the LLCs agents of CCI. CCI is not subject to venue in the district under Section 1400(b).

The district court found that venue is proper by disregarding the corporate forms without satisfying the stringent test for piercing the corporate veil. It ruled that "the appropriate inquiry" to determine whether a "regular and established place of business of a subsidiary to be imputed to a parent" is if CCI and "and its subsidiaries 'act as a single enterprise.'" Appx16, Appx19 (quoting *Soverain IP, LLC v. AT&T, Inc.*, 17-cv-0293, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017) *report and recommendation adopted* 2017 WL 6452802 (Dec. 18, 2017)). Under *Andra Group, L.P. v. Victoria's Secret Stores, LLC.*, 6 F.4th 1283 (Fed. Cir. 2021), and *Celgene Corporation v. Mylan Pharmaceuticals Inc.*, 17 F.4th 1111 (Fed. Cir.

2021), that is not the "appropriate inquiry." The district court should have considered the "threshold inquiry" of whether CCI and the LLCs "maintained corporate separateness" as dictated in *Andra* and again in *Celgene*, and the many factors that are required to find a lack of corporate separateness, or alter ego, under Fifth Circuit law. That did not happen here.

The district court separately concluded that all three *Cray* requirements were satisfied because "[CCI] is Spectrum and Spectrum is [CCI]" or CCI and the LLCs are "the same singular entity."[1] Appx5, Appx12, Appx15-16. The district court's conclusions under the *Cray* factors would make legal or logical sense had it determined that CCI and the LLCs lack corporate separateness. Yet, in reaching this conclusion, the district court disclaimed any "need to pierce the corporate veil." Appx12. With this disclaimer, the district court should have followed "[s]ettled law" and "presume[d] that corporations exist as separate entities." *Interactive Toybox, LLC v. The Walt Disney Co.*, 17-cv-1137, 2018 WL 5284625, at *3 (W.D. Tex. Oct. 24, 2018) (citation omitted). The district court did not apply that presumption. Instead, it misapplied this Court's test for venue by looking past the corporate forms

---

[1] The district court relied heavily on its decision in *Entropic Communications LLC v. DIRECTV, LLC* ("*DIRECTV*"), 22-cv-00076-JRG, 2022 WL 19076758 (E.D. Tex. Oct. 24, 2022), which involved a similarly flawed analysis of the patent venue statute with respect to a group of related companies on a motion to transfer.

to find each *Cray* factor satisfied without actually determining whether an alter ego

relationship, or lack of corporate separateness, exists.

Not only is the district court's decision contrary to this Court's prior decisions,

but it is also contrary to other district court decisions in the Eastern District of Texas

and within the Fifth Circuit regarding the application of agency, ratification, and

imputation under Section 1400(b). *E.g.*, *Andra*, 6 F.4th at 1288-90 (discussing

agency and ratification in context of the parent-subsidiary relationship under *Cray*,

finding a parent did not ratify a subsidiary's location where they "work[ed] together

in some aspects," maintained a "unified business model," and the parent advertised

a place of business or set up an office in the district); *Nat'l Steel Car Ltd. v. The

Greenbrier Cos., Inc.*, 19-cv-00721, 2020 WL 42889388, at *2, *3-5 (W.D. Tex.

July 27, 2020) (noting courts in the Fifth Circuit apply an alter ego analysis when

considering whether to impute the acts of a subsidiary to a parent/defendant under

the patent venue statute; the plaintiff did not meet "its heavy burden of showing a

sufficient degree of control [] to impute the [] subsidiaries' property to [the parent]");

*Bd. Of Regents v. Medtronic PLC*, 17-cv-0942, 2018 WL 4179080, at *2 (W.D. Tex.

July 19, 2018) (no lack of corporate separateness or ratification, holding "the use of

the common or generic name . . . on the exterior of the building, as well as the press

releases announcing the business to be conducted in the district by [subsidiaries],

which are separate and distinct corporate entities, are insufficient to establish that

venue" is proper); *Soverain*, 2017 WL 5126158, at *1 (rejecting argument that a parent and subsidiary "should be considered a single entity for purposes of [patent] venue" where the parent was a holding company, was a "legally and factually separate corporate entity, distinct from its subsidiaries," and subsidiaries "maintain[] [their] own independent corporate, partnership, or limited liability company status, identity, and structure"); *IPVX Patent Holdings, Inc. v. Broadvox Holding Co., LLC*, 11-cv-0575, 2012 WL 13012617, at *3 (E.D. Tex. Sept. 26, 2012) (rejecting argument that parent-defendant "must control [its subsidiary-LLC that conducts business in this district] because" the parent-defendant manages "its subsidiary" because "the control exerted by [the parent-defendant] is [no] greater than that 'normally associated with common ownership and directorship.'" (citation omitted)).

Mandamus is therefore warranted to correct the district court's ruling that has the effect of expanding the patent venue statute to corporate affiliates that have no regular and established place of business in the district.

### B. CCI Maintains Corporate Separateness From the LLCs

The district court referred to CCI as "Charter," suggesting every LLC subsidiary is one in the same. However, CCI does not have any business operations of its own. Appx384. It is a holding company, not an operating company, and is the ultimate corporate parent of the LLCs that each perform separate, distinct business

functions in support of the Spectrum brand.  Appx355-356 (collecting testimony explaining the different functions of various LLCs).  For example, there are different LLCs that provide customers with cable or Voice over IP services under the Spectrum brand in separate geographic regions.  Appx384-385.

This means that CCI does not sell any products or provide any services, including the Accused Services and Products,[2] in the district.  Appx376-377, Appx384.  CCI is not licensed by the State of Texas to provide the Accused Services. Instead, only one LLC is licensed to provide this service in Texas:  Spectrum Gulf. Appx397.  The Public Utility Commission of Texas requires "any entity that proposes to provide cable or video service anywhere in the State of Texas . . . to obtain a SICFA [State-Issued Certificate of Franchise Authority],"[3] and Spectrum Gulf, *not* CCI, holds a SIFCA.  The customer service documentation reflects this reality.  When a customer in the district purchases an internet or video package, the customer accepts terms and conditions with Spectrum Gulf.  Appx390-392, Appx404-405, Appx407-408.  The customers are treated as customers of the relevant entity that provides the specific services, such as Spectrum Gulf in Texas.  CCI is not a party to any of those agreements.  Appx386, Appx392, Appx404-405.

---

[2] The operative complaint alleges patent infringement related to cable television and internet services ("Accused Services") through the lease, sale or distribution of certain set top boxes and cable modems ("Accused Products").  Appx160.
[3] https://www.puc.texas.gov/industry/communications/business/sicfa/sicfa.aspx.

Moreover, CCI does not own or lease the Accused Products. Those products are owned by Charter Distribution LLC and leased to the various LLC subsidiaries, including Spectrum Gulf, for a fee pursuant to lease agreements. Appx406. Spectrum Gulf then leases (or subleases) the products to Spectrum customers for a fee.[4] Appx406. Spectrum Gulf, not CCI, is the entity that provides or ships devices, such as the Accused Products, to customers. Appx406, Appx412, Appx421-423.

Further, CCI's corporate records are maintained separate from the LLCs and care is taken to ensure that any actions taken by CCI are separate from those taken by the LLC subsidiaries. Appx382-383, Appx385, Appx402, Appx409-411. Costs among the LLCs are allocated based on entity accounting and their activities. Appx388, Appx405, Appx409-410. Each LLC operates pursuant to a delegation of authority policy, Appx385, and they act in accordance with their operative formation documents, including governing agreements, and pursuant to the pertinent Delaware statute governing limited liability corporations.

### C. **CCI Is The Manager of The Limited Liability Companies**

Each of the relevant LLCs were set up pursuant to, and in conformity with, the Delaware LLC Act (the "LLC Act"). Appx356-358 (discussing the LLC act). Under the LLC Act, CCI has been appointed as a manager of the different LLCs

---

[4] CC LLC sets products and service prices, and the individual stores are permitted to operate and set prices within that framework. Appx406.

(through their respective members) that perform the separate business functions as discussed above.  Appx385.

For example, Spectrum Gulf is an LLC incorporated under the laws of Delaware and is a separate, indirect subsidiary of CCI.  Spectrum Gulf provides internet and video (*i.e.*, cable) services under the Spectrum brand to customers in certain regions within the United States, including Texas.  Consistent with the LLC Act, the sole member of Spectrum Gulf appointed CCI as the manager of Spectrum Gulf pursuant to an Amended and Restated Limited Liability Company Agreement.[5] Appx383, Appx349, Appx425.  That agreement sets out the "governance" of the LLC and includes the powers and limitations of CCI as a manager.  Appx385, Appx425-428.

The Spectrum Gulf management agreement provides, *inter alia*, that CCI, in its role as manager, is ***authorized*** to engage in certain conduct, including to elect or remove Spectrum Gulf board members or to execute or endorse any contract or agreement "***on behalf of [Spectrum Gulf]*** without the consent of any Member or other person."  Appx427 (emphasis added).  Consistent with the LLC Act, the agreement states that "[n]o annual or regular meetings of the Manager or the Members are required."  Appx427; Del. Code Ann. tit. 6, §§ 18-101, *et seq.*; *Jacoby*

---

[5] The Spectrum Gulf management agreement is between Texas Warner Cable Texas LLC ("TWCT") and Time Warner Cable Enterprises LLC, the sole member of TWCT.  Spectrum Gulf was formerly TWCT.  Appx452.

*Donner, P.C. v. Aristone Realty Cap., LLC*, 17-cv-2206, 2020 WL 5095499, at *15 (E.D. Pa. Aug. 28, 2020) ("[M]ember meetings are not required by . . . [the LLC Act].").  Further, under the agreement, Spectrum Gulf cannot act unilaterally, and must obtain CCI's consent as the manager for certain business activities.  Appx427-428.

CCI has also been appointed as the manager of Charter Communications Operating, LLC ("CCO LLC") pursuant to a different management agreement. Appx441.  Under that agreement, "Company Entities," such as Spectrum Gulf for example, "shall ***seek*** the ***advice*** of the Manager regarding the business, properties, operations and activities . . . , ***and subject to the direction, control and general supervision of the Company Entities***, the Manager agrees to provide such advice." Appx442 (emphases added).  It also provides that CCI, as manager, shall provide "management services," which includes categories that CCI shall provide "advice," or "consultation" or "review" or "recommendations" or "assistance" or "guidance." Appx442-443.

### D.  CCI Does Not Have Any Employees And Does Not Own or Lease, or Maintain and Operate, Property In The District

CCI does not have any employees.  Appx416, Appx388-389, Appx394, Appx403.  Rather, Charter Communications, LLC ("CC LLC"), a separate and distinct LLC, employs the individuals who work for the LLC subsidiaries that provide various business functions in support of the Spectrum brand.  Appx388,

Appx402. CC LLC, as the employer, allocates employees to the different LLCs and charges those operating companies, like Spectrum Gulf, for those employees to carry on the Spectrum brand-related business. Appx402, Appx405, Appx407, Appx409-410, Appx412. CCI does not participate, nor is it consulted, in the hiring and firing of CC LLC employees. Appx416, Appx403-404.

CCI also does not own, lease, maintain, or operate any property in the district. Appx418-419. Instead, each location identified in the complaint is owned or leased by Spectrum Gulf. *Id.* CCI does not have any employees who work at those locations, nor does it maintain or operate those stores. The CC LLC employees are allocated to Spectrum Gulf to operate the stores on a day-to-day basis. Appx391. Each LLC subsidiary, through CC LLC employees, decides the needs of the LLC subsidiary, such as the amount of products or equipment to lease. Appx412.

### E.  CCI Does Not Reside or Have a Physical Presence In The District

As the district court recognized, CCI does not reside in the district because it is a Delaware corporation with its principal place of business in Connecticut. Appx376-378. Not only does CCI not have a physical place in the district, but CCI does not hold itself out to the public as having a presence in the district or providing services there. Although the district court questioned the relevance of the Spectrum brand name, neither CCI, nor the LLC subsidiaries, market any products or services or buildings under CCI's name. Appx406, Appx413, Appx392-Appx393. The LLC

subsidiaries use the Spectrum brand "for all customer-facing functions in all retail stores" and any customer-facing employee uses a Spectrum signature block in email correspondence. Appx413, Appx406, Appx392.

To that end, "multiple entities," not including CCI, are responsible for advertising and marketing of the Spectrum brand, and guidelines for the Spectrum brand is set at a corporate level, *i.e.*, CC LLC, which allocates the costs of advertising and marketing among the operating companies. Appx413. There are also regional marketing departments, not including CCI, in each geographic sub-region that have the flexibility to "control" the regional advertising and marketing within the guidelines set by corporate. Appx413.

### F.  Procedural History

Non-practicing entity Entropic Communications, LLC ("Entropic") commenced this patent infringement action in the district against CCI, and two other LLC subsidiaries—not Spectrum Gulf—on April 27, 2022, based on six patents related to the Accused Services and Products. Appx21-Appx157. Entropic filed an amended complaint on May 24, 2022. CCI and then-named defendants filed a motion to dismiss pursuant to Rule 12(b)(3) for improper venue on July 8, 2022, after which the parties exchanged venue-related discovery agreed upon by the district court, with CCI producing documents and two corporate representatives for depositions. On January 10, 2023, Entropic filed both an opposition to the motion

to dismiss and a Second Amended Complaint, dropping the two other LLC defendants, leaving CCI as the sole defendant, and adding new allegations regarding venue, which mooted the motion to dismiss.  Appx158.  CCI filed a renewed motion to dismiss under Rule 12(b)(3) for improper venue on January 30, 2023.  Appx344. The motion was fully briefed by March 23, 2023 (Appx455, Appx730, Appx792, Appx796) and the district court issued the decision at issue here on May 3, 2023 (Appx1-Appx20).  The district court did not stay the case, and the parties exchanged claim construction briefs and continue to engage in discovery.  The *Markman* hearing occurred on June 13, 2023.

On February 10, 2023, Entropic commenced three new patent infringement actions in the district against CCI.[6]  CCI filed motions to dismiss for improper venue in all three actions.  The motions are still pending.

## IV.    **REASONS THE WRIT SHOULD ISSUE**

A writ of mandamus is appropriate when (1) the "right to issuance of the writ is clear and indisputable"; (2) the petitioner has "no other adequate means to attain the relief" desired; and (3) the writ is "appropriate under the circumstances."  *Cheney*

---

[6] *Entropic Comms., LLC v. Charter Comms., Inc.*, 2:23-cv-00050-JRG (E.D. Tex.); *Entropic Comms., LLC v. Charter Comms., Inc.*, 2:23-cv-00051-JRG (E.D. Tex.); *Entropic Comms., LLC v. Charter Comms., Inc.*, 2:23-cv-00052-JRG (E.D. Tex.). In the last filed action, Entropic asserted two patents that were issued from the same patent family as one of the patents in this action.  On May 11, 2023, CCI moved to consolidate the last filed action with this action.  That motion is pending.

*v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004) (citations and quotation marks omitted). Mandamus may be employed to correct "a clear abuse of discretion or usurpation of judicial power" that "produce[s] a patently erroneously error." *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012); *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 310 (Fed. Cir. 2008). "A district court abuses its discretion" when it relies on "clearly erroneous factual findings;" "erroneous conclusions of law;" or "misapplies the law to the facts." *Volkswagen*, 545 F.3d at 310 (citation omitted).

### A.  <u>The Right To A Writ Is Clear And Indisputable</u>

Venue in patent cases is exclusively governed by Section 1400(b), which provides that venue is proper either (1) in the district in which the defendant resides, or (2) where it has a regular and established place of business and has committed acts of infringement. 28 U.S.C. §1400(b).

### 1.  <u>The District Court Relied On an Erroneous Standard and Erroneous Factual Findings To Impute the Presence Of Spectrum Gulf To CCI</u>

The district court considered "the concept of imputation" as "an alternative to the evidence of ratification" under the third *Cray* factor to conclude *both* that (1) the actions of the LLCs are "properly imputed to [CCI]"; and (2) the four Spectrum Gulf locations are of CCI "under a lack of corporate separateness theory." Appx19. The district court committed legal and factual errors in reaching this conclusion.

*First*, the district court stated that it made a "factual finding" regarding imputation, implying that this is a factual question rather than a legal analysis. Appx18-Appx19. However, it reached its conclusion by relying on an erroneous legal standard. It explained that the "appropriate inquiry" is whether CCI "and its subsidiaries 'act as a single enterprise,'" notwithstanding its acknowledgement that corporations "may be treated as one for purposes of venue" if "the corporations disregard their corporate separateness *and* act as a single enterprise[.]" Appx16-Appx17, Appx19 (emphasis added) (quoting *Soverain*, 2017 WL 5126158, at *1). Against this legal standard, the district court concluded it could impute the presence of the LLCs to CCI because they "act as a single enterprise." Appx19.

That is not the "appropriate inquiry." This Court held that the "threshold inquiry when determining whether the place of business of one company can be imputed to another, related company is whether they have maintained corporate separateness." *Andra*, 6 F.4th at 1289. "If corporate separateness has not been maintained, the place of business of one corporation may be imputed to the other for venue purposes." *Id.*; *Celgene*, 17 F.4th at 1125; *Soverain*, 2017 WL 5126158, at *1. But, "[s]o long as a formal separation of the entities is preserved, the courts ordinarily will not treat the place of business of one corporation as the place of business of the other." *Soverain*, 2017 WL 5126158, at *1 (quoting Fed. Prac. & Proc. § 3823 & nn.24-26).

14

Here, the district court abused its discretion because it (1) *only* considered whether CCI acted as a "single enterprise" when deciding to impute the conduct of the LLCs to CCI, and (2) disregarded any inquiry of whether corporate separateness was maintained and misapplied the law to the facts because it did not consider any of the factors that are relevant to corporate separateness under Fifth Circuit law. *See Nat'l Steel*, 2020 WL 4289388, at *2 (delineating a "non-exhaustive list of factors courts may consider" when deciding whether to impute the property of a subsidiary to the parent under an alter ego theory). Without any support, the district court established a new standard—proving a "single enterprise" is alone sufficient to find a lack of corporate separateness—that overrides the factors courts must consider when determining the application of the alter ego doctrine, *i.e.*, lack of corporate separateness.

*Second*, the district court made "factual findings" under this "single enterprise" standard that is contrary with the law governing lack of corporate separateness. Specifically, the district court found that CCI "unabashedly holds itself out to the world as a single enterprise" through federal filings, marketing, testimony that the LLCs are "legal formalities" (which it "confirm[ed]" because employees are staffed through a single entity), and because CCI "signs all contracts

15

and documents on behalf of its subsidiaries."[7] These "factual findings" conflict with the well-established propositions that: (1) a "subsidiary's presence in a venue cannot be imputed to the parent absent disregard for corporate separateness," even "if a parent corporation controls a subsidiary's operations and the companies share a unitary business purpose" and there exists an "interdependence" between the entities, *Soverain*, 2017 WL 5126158, at *1 (citations omitted); (2) to establish a lack of corporate separateness, "there must be a 'plus factor, something beyond the subsidiary's mere presence within the bosom of the corporate family,'" *Interactive Toybox*, 2018 WL 5284625, at *3; (3) "[e]ven 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations," *Id.* (citation omitted); *Celgene*, 17 F.4th at 1126; and (4) corporate separateness is maintained even where there is "shared marketing, branding, and trade names" as well as a parent's involvement in alleged infringing conduct or in signing lease documents. *Celgene*, 17 F.4th at 1126.[8]

Moreover, the district court relied on erroneous factual findings because it ignored that in each of the "filings" relied upon by Entropic, and thus by the district

---

[7] As addressed below, the district court relied on the same factual showings in support of each *Cray* factor, each agency factor, and each ratification consideration and therefore infused imputation concepts into what should have been separate legal analyses based on the presumption that the corporate forms are maintained.

[8] Although *Celgene* was decided under Third Circuit law, the law on corporate separateness is similar to that under Fifth Circuit law.

court,[9] CCI explained that services are provided through the LLCs. *Compare* Appx19, *with* Appx739 (explaining that the "filings" are consistent with the corporate forms, including Appx536, an annual report noting that ""Charter," "we," "us" and "our" refer to [CCI ***and its subsidiaries***." (emphasis added)). Moreover, the district court relied on Entropic's references to federal filings in 2011 and 2014. Appx19 (citing Appx476-477). The district court ignored arguments that those filings were well *before* 2022, the year Entropic commenced this action, and well *before* the time that CCI owned any Time Warner Cable entities, including Spectrum Gulf,[10] and ignored that "[v]enue is determined by the facts and situation as of the date suit is filed." *Parallel Network Licensing LLC v. Arrow Elecs., Inc.*, 21-cv-0714, 2022 WL 1597364, at *3 (E.D. Tex. May 19, 2022).

The district court also found that imputation was proper based on managerial duties under the LLC Act and the Spectrum Gulf management agreement, *i.e.*, because CCI "signs all contracts and documents" on behalf of the LLCs. Appx19; Appx17-Appx18. The district court effectively held that a manager that acts on

---

[9] In its decision, the district court predominately cites to Entropic's opposition brief as factual support for its conclusions. At times, however, Entropic's recitation (and consequently the district court's recitation) of the facts contradict the record. *Compare* Appx14 (citing Entropic's opposition brief and stating a corporate officer stated the existence of the subsidiaries is a "***mere*** formality"), *with* Appx505 (explaining corporate governance as expressed in management agreements is a "***legal*** formality").

[10] https://ir.charter.com/news-releases/news-releasedetails/charter-communications-merge-time-warner-cable-and-acquire.

behalf of an LLC is one and the same with the LLC it manages. Yet, it did not cite any authority for this proposition, made no mention of the LLC Act, and did not analyze whether the corporate forms were maintained. *But see IPVX Patent*, 2012 WL 13012617, at *3 (considering alter ego argument in a similar context, and rejecting argument that a parent/manager "controlled" the subsidiary/managed entity, concluding "there is no evidence that the control exerted by [the parent-defendant] is greater than that 'normally associated with common ownership and directorship.'" (citation omitted)).

The district court also discredited direct evidence that CCI signed lease agreements *consistent* with the corporate forms, in line with the "legal formalit[ies]," as the duly appointed manager of Spectrum Gulf under the LLC Act and the management agreement, and *not* for itself. For example, the management agreement and Delaware law provide that CCI as the "Manager" of Spectrum Gulf exercises "the powers of the Company [Spectrum Gulf]," and not CCI. Appx426; Del. Code Ann. tit. 6, § 18-402. The Spectrum Gulf management agreement authorizes CCI to "execute or endorse" agreements or contracts "***on behalf of***" Spectrum Gulf. Appx427 (emphasis added). And, this contractual relationship alone is insufficient to prove imputation. *IPVX Patent*, 2012 WL 13012617, at *3.

*Third*, as part of its alleged "fact finding," the district court found that the Spectrum Gulf locations in the district are "of the defendant," the third *Cray* factor,

under a "lack of corporate separateness theory." Appx19. However, the district court did not engage in a lack of corporate separateness analysis. Nor did it explain how it could find a lack of corporate separateness under the third *Cray* factor, and not under the others. If it is true that CCI and the subsidiaries "act as a single enterprise" and "lack corporate separateness"—and it is not—that finding alone should have started and ended the venue analysis because "the place of business of one corporation may be imputed to the other for venue purposes" only where "corporate separateness has not been maintained." *Andra*, 6. F.4th at 1289.

The district court clearly abused its discretion because it reached an erroneous result based on erroneous factual findings, conclusions of law, and because it misapplied the law to the facts.

### 2.    The District Court Relied On Erroneous Factual and Legal Conclusions, and Misapplied the *Cray* Factors, To Find CCI Has a Regular and Established Place Of Business In the District

The district court found that Entropic met its burden in demonstrating that CCI had a "regular and established place of business" under Section 1400(b) and the *Cray* factors because CCI and its subsidiaries "act as a single enterprise." In reaching this conclusion, the district court abused its discretion by ignoring this Court's precedent, assuming, without deciding, that CCI and the LLCs lack corporate separateness, and commingling concepts of agency, ratification, and imputation to conclude the *Cray* factors were met.

### (a) *CCI Does Not Have a "Place Of Business" In the District*

The first *Cray* factor requires that there "must be a physical place in the district," and a "place" must be a "physical, geographical location in the district from which the business of the defendant is carried out." *Cray*, 871 F.3d at 1362. The district court referenced the four stores in the district that are owned or leased and operated and maintained by Spectrum Gulf. Appx4.

While the district court only had to consider whether there was a physical place of business from which the business of CCI is carried out, as required under *Cray*, it engaged in an analysis that would be expected under the third *Cray* factor or when considering a lack of corporate separateness. That is because it found that CCI carried out its business in the district because "[CCI] is Spectrum, and Spectrum is [CCI]." Appx5-Appx6. Relying on its *DIRECTV* decision, the district court stated that it is "irrelevant" that stores in the district bear the "Spectrum" logo and are owned/leased and operated by Spectrum Gulf because "Charter," presumably referring to CCI, "operates stores and provides services in this District under [] its brand name, Spectrum," and "the two names represent the one and same entity." Appx6.

For the district court to conclude that "[CCI] is Spectrum," it had to find a lack of corporate separateness, which would have allowed "the place of business of one company [to] be imputed to another, related company[.]" *Andra*, 6 F.4th at 1289

20

(citation omitted).  The district court did not engage in that analysis here, and should have "presume[d] that corporations exist as separate entities."  *Interactive Toybox*, 2018 WL 5284625, at *3.  But it did not and it assumed, without conducting any analysis, that CCI and the LLCs lack corporate separateness.

The district court thus relied on erroneous conclusions of law and misapplied that law to erroneous finding of facts to conclude under the first *Cray* factor that a parent corporation carries out its business in any location owned or operated by a subsidiary without reference to the corporate form.[11]

### (b)  CCI Has No Employees or Agents Conducting Business in the District

Under the second *Cray* factor—whether the place of business was regular and established—the district court found that the CC LLC employees working at the stores in the district are "agents" of CCI.  Appx10; *In re Google LLC*, 949 F.3d 1138, 1344 (Fed. Cir. 2020) (a "'place of business' generally requires an employee or agent of the defendant to be conducting business at that place.").  In considering each agency factor, the district court again implicitly pierced the corporate veil to set aside CCI's corporate form and attribute the conduct of the LLC subsidiaries to CCI.

In *Google*, this Court explained that the elements of agency include: "(1) the principal's 'right to direct or control' the agent's actions, (2) 'the manifestation of

---

[11] The district court did not consider any evidence that CCI and the LLCs observe all corporate formalities and maintain corporate separateness.

consent by [the principal] to [the agent] that the [agent] shall act on his behalf,' and (3) the 'consent by the [agent] to act.'"   949 F.3d at 1345 (citation omitted) (alterations in original).   The district court here found all three elements satisfied by incorrectly reading the management agreements between CCI and the LLCs and by relying on other alleged facts that this Court rejected in *Andra* as insufficient to establish agency.

*First*, the district court held that CCI has the "right to direct or control" the actions of employees because the CCO LLC management agreement gives CCI "the ability to materially control" CC LLC employees.   Appx10.   As was the case in *Andra*, the district court's finding on this point is "directly contradicted" by CCI's corporate representatives, who explained that CCI is not "involved in the hiring and firing of employees in Texas," and to the extent there are officers of both CCI and CC LLC who are involved in the hiring and firing of CC LLC employees, they are involved "in their capacity as [CC LLC] employees," ***not*** in their capacity as CCI officers.   *Andra*, F.4th at 1288-89; Appx403-Appx404, Appx416.   The district court's conclusion also disregarded the plain language of the management agreement, which does not address any "right" to control employees.   Rather, the CCO LLC management agreement only allows CCI to provide "***advice*** concerning" personnel decisions or to provide "***review, consultation and advice*** concerning" personnel or operations or policies and procedures.   Appx442-Appx443 (emphases

added).  Providing advice is far different than directing an employee to do something and does not evidence the right to control an employee's actions.  Moreover, the district court did not explain how the "***ability to materially control*** the employees" is the appropriate standard and the same as granting CCI the unilateral "***right to control*** the [] employees," what is actually required under the first agency element. Appx10 (emphases added).

*Second*, the district court considered the second agency element and concluded that "[b]y claiming CC LLC employees as its own, [CCI] manifests its consent for the employees of CC LLC to act on its behalf."  Appx11.  In support, the district court cited "facts" that this Court considered in *Andra* and found to be "[in]sufficient to show that [the subsidiary] employees are agents of" the parent entity.  6 F.4th at 1288-89.  For example, the district court referenced statements in an annual shareholder report that characterized CCI "as a company with over 93,000 employees."  Appx11.  Like this Court concluded in *Andra*, those statements are not sufficient to establish agency because they cover the entire Spectrum brand, and any reference to "we" does not mean CCI and "could include the individual subsidiar[ies]" providing services under the Spectrum brand.[12]  *Andra*, 6 F.4th at 1288; Appx738-Appx739 (explaining that the cited references incorporate the

---

[12] The annual report cited states "[w]e . . . serv[e] more than 32 million customers . . . through our Spectrum brand" and that "'Charter,' 'we,' 'us' and 'our' refer to [CCI] ***and its subsidiaries***."  Appx579 (emphasis added).

LLCs). Similarly, there is no evidence that CCI controls the website that allegedly "promote[s] Charter/Spectrum jobs," nor is there any evidence that the website relied upon by Entropic, and thus the district court, promotes "Charter" or CCI jobs for that matter. That website is a "spectrum.com" website and promotes "Spectrum jobs." Appx11 (citing Appx483).[13] And even if CCI did control the website, this Court has explained that "close control of . . . the website does not equate to 'the right to direct or control' employees at the physical" locations in the district. *Andra*, F.4th at 1289.[14] The district court failed to adhere to binding precedent from this Court and provided no analysis regarding its proposition that a parent entity acknowledging the existence of a subsidiary's employees is a manifestation "of consent" for the employees to act on CCI's behalf. Nor is there any evidence that the any subsidiary employee has ever acted to bind CCI.

---

[13] As support, the district court cited to Entropic's opposition brief, which referred to an earlier portion of the brief (Appx483 citing Appx474-Appx475), which in turn cited to an exhibit reflecting job postings on spectrum.com for "Spectrum jobs" (Appx608).

[14] CCI did not "acknowledge workers as its own employees/agents in federal court filings," as the district court suggests. Appx11. CCI responded to a complaint that alleged an individual was an "agent," and had no need to dispute that fact at the pleading stage and merely argued that the plaintiff "failed to plead facts establishing that [the individual] was negligent" because as a purported agent he "did not owe [the plaintiff] an individual duty." Appx742. In any event, the district court ignored Entropic's acknowledgement that CC LLC, not CCI, employed this individual. Appx484.

*Third*, the district court concluded the third element of agency was satisfied because employees purportedly "believe they are acting on behalf of" CCI and thus "consented to acting on [CCI's] behalf." Appx12. The district court did not explain legally or factually how a purported employee's "belief" that it works for an entity equates to "consent" to act on an entity's behalf. Nor did it cite any legal support for this recitation of what it means for an agent to "consent" to act on a principal's behalf.

The district court reached this conclusion because employees at Spectrum stores apply through the "single Charter website"—they do not, it is a Spectrum website—and because they "are required to sign an arbitration agreement which applies to all disputes 'whether made against Charter, or any of its subsidiaries, parent or affiliated entities." Appx11. The district court also relied on LinkedIn profiles that purportedly indicate CCI as an employer and testimony that employees may not know the distinction between the various subsidiaries. Appx11-Appx12. Crucially missing is any explanation or analysis by the district court as to how these "facts" reflect a "belief" that these employees are working for CCI, and consequently how this "belief" equates to a "consent to act" on behalf of CCI in the district.

The district court also failed to consider, nor did Entropic suggest, whether any of these employees work or operate out of the Spectrum Gulf locations in the district, which is essential under this Court's jurisprudence. That is because the

district court infused concepts of imputation to conclude that because *all* employees allegedly believe they work for CCI, then *all* CC LLC employees in the district purportedly consent to act on CCI's behalf.  Because the district court disclaimed any need to pierce the corporate veil for its analysis under *Cray*, its attempt to manufacture consent was improper.

Notwithstanding its conclusion that CC LLC employees are agents of CCI, the district court also blended concepts of imputation and ratification to separately hold that the second *Cray* factor was satisfied.  Specifically, the district court relied on its *DIRECTV* decision and held under the second *Cray* factor that it was "persuaded that [CCI] is Spectrum and Spectrum is [CCI]" because CCI "placed their brand or trade name on the building, and at trucks parked at these locations," and because CCI "holds the locations in this District out as its own," there was "no need to pierce the corporate veil."  Appx12.

This Court made clear that the appropriate inquiry for the second *Cray* factor is whether CCI has a regular and established place of business in the district, which "***requires*** an employee or agent of the defendant to be conducting business at that place," *Google*, 949 F.3d at 1344 (emphasis added), and not whether CCI "holds the locations in this District out as its own," Appx12, which is a separate legal analysis under ratification and the third *Cray* factor.  The district court did not explain why

it included this analysis here, nor did it explain why it misstated what is required under the second *Cray* factor.

### *(c) CCI Has No Place of Business in the District*

For the third *Cray* factor, whether a "place of business" is "of the defendant," the district court made clear it was not considering "lack of corporate separateness" and, after setting that theory aside, found that CCI ratified "the locations in this district" as its own.   Appx14-Appx16.   This Court has instructed that when considering whether a company ratified a location as its own, "[r]elevant considerations" include whether "the defendant owns or leases the place, [] exercises other attributes of possession or control over the place," represents "that it has a place of business in the district" such as by listing "the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself." *Cray*, 871 F.3d at 1363-64.   The district court did not engage in this analysis, and instead invoked imputation concepts and factual showings that this Court has held are insufficient to establish ratification.

As purported evidence of ratification, the district court stated that CCI advertises retail locations, service packages, and job listings through a nationwide ***Spectrum*** website.   Appx15.   Yet, it failed to acknowledge that the ***Spectrum*** website "points customers to" Spectrum Gulf locations, and not CCI's locations, which is a factor this Court instructed in *Andra* "weigh[ed] ***against*** a finding of

27

ratification[.]" *Andra*, 6 F.4th at 1290 (emphasis added); Appx601-616 (Spectrum stores, Spectrum service packages, and Spectrum jobs available via spectrum.com).

This Court has also reinforced the proposition that "the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient; the defendant *must actually engage in business* from that location." *Andra*, 6 F.4th at 1289 (emphasis in original) (quoting *Cray*, 871 F.3d at 1364). Here, the district court held that CCI engaged in business from the Spectrum Gulf locations in the district because CCI "owns or leases" the locations and CCI purportedly "negotiated and signed the leases for Spectrum [s]tores in" the district. Appx15-Appx16.  That is belied by the record.  There is no evidence that CCI negotiated the leases for any location in the district,[15] and CCI indisputably does not own, lease, maintain, or operate any property in the district.  Appx418-Appx419. Under this Court's precedent, therefore, these factors should have weighed against a finding of ratification. *Andra*, 6 F.4th at 1290 (finding that defendants did not own, lease or operate stores in the district weighed against ratification).

---

[15] The district court accepted Entropic's representation that CCI "negotiated" the lease agreements and cited to Entropic's brief as support.  Entropic's brief on that point stated that the "leases" for stores in the district were "negotiated and executed by CCI" solely because CCI, as manager, signed lease agreements.  Appx15 (citing Appx467-468).  This is another repackaging of Entropic's cursory veil piercing argument.

As it did with lack of corporate separateness, the district court implicitly concluded that managerial responsibilities under an LLC agreement or the LLC Act support a finding of ratification, but it did not explain how a contractual relationship, *i.e.*, responsibilities as a manager, establishes control or a relationship that is anything more than a LLC manager and a managed LLC. As discussed above, the district court ignored that CCI signed lease agreements *consistent* with the corporate forms as the duly appointed manager of Spectrum Gulf under the LLC Act and the management agreement, and *not* for itself. *See* Section IV.A.I, *supra*. This Court has explained that a contractual relationship is insufficient to prove a place of business is "of the defendant" under the third *Cray* factor. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1015 (Fed. Cir. 2018) (a contractual relationship between entities "does not necessarily make [one company's] call center 'a regular and established place of business' of" another company in the district).

The district court also found ratification because of an overlap in officers between CCI and the subsidiaries, and a corporate representative testified the "subsidiaries [are] a [legal] formality." Appx14. The district court did not explain how an overlap of corporate officers supports a finding of ratification. Even if it were relevant to the analysis, the district court's reliance on an overlap of officers to find ratification is contrary to *Celgene*, where this Court rejected that type of factual showing for an alter-ego analysis, concluding that it is a "well established principle"

29

of corporate law "that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *Celgene*, 17 F.4th at 1126; *United States v. Bestfoods*, 524 U.S. 51, 69 (1998).

The district court continued its ratification analysis by invoking its "single enterprise" reasoning, suggesting ratification exists because CCI "holds itself out as a company that provides internet and television services across 41 states." Appx15. However, as this Court held in *Andra*, even a "unified business model" is "insufficient" to show ratification.[16] *Andra*, 6 F.4th at 1290. The district court then found it irrelevant that the website, buildings, and services are under the name "Spectrum" because CCI and Spectrum "denote" a "singular entity." Appx15. This is an incorrect recitation of the law and contrary to the facts. Whether a defendant "display[s] their corporate names in the retail locations" is a "factor[]" that "weigh[s] against a finding of ratification[.]" *Andra*, 6 F.4th at 1290. Here, all of the retail stores, websites, and services display the Spectrum name, and not CCI's corporate name, which militates against ratification—the exact opposite of what the district

---

[16] While the district court noted that the corporate website states "Spectrum is a suite of advanced broadband services offered by" CCI (Appx15), this statement is entirely consistent with the corporate forms—CCI is the ultimate corporate parent over the LLCs that carry out the Spectrum brand. More importantly, this one-off reference does not change the record before the district court that CCI does not provide any services or products, nor does it hold itself out as offering services or products in the district.

court concluded here. *Id.* (rejecting ratification theory, stating a "shared use" of a name "does not detract from the separateness of the businesses" where lack of corporate separateness is not in dispute).

### B.  The Other Mandamus Factors Are Satisfied

CCI has no other adequate means to attain the relief sought because it will be forced to litigate in an improper venue, and "the harm . . . will already have been done by the time the case is tried and appealed[.]" *Volkswagen*, 545 F.3d at 319. And, "[w]hile not alone sufficient to justify mandamus, the substantial expense to the parties that would result from an erroneous district court decision" regarding venue "confirms the inadequacy of appeal in this case." *Google*, 949 F.3d at 1342-43.

Further, since Entropic commenced this case, CCI has been named as a defendant in four other litigations in the district—Entropic *alone* commenced *three* of those litigations.  To reserve its rights, CCI has filed motions to dismiss based on improper venue in all of those cases but without mandamus, the district court's decision will be binding which will result in CCI litigating all four of those cases through appeal.  Relief is warranted to clarify the legal standards and factual findings erroneously recited and applied by the district court here. *Cray*, 871 F.3d at 1359.

Granting mandamus in this case will also ensure uniformity among district courts and will clarify and correct the application of the patent venue statute as it

relates to the parent-subsidiary relationship and where the corporate forms remain intact.  Otherwise, the district court's decision risks an influx of litigation against parent corporations in *any* district in which a subsidiary or related company has operations, even where the corporate forms are maintained.

## V.    <u>**CONCLUSION**</u>

For these reasons, CCI respectfully requests that this Court issue a writ of mandamus directing the district court to dismiss this case for improper venue.

Dated:         June 16, 2023

Respectfully submitted,

*/s/  Daniel Reisner*
Daniel Reisner
Elizabeth Long
Melissa Brown
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York, 10019-9710
Telephone: (212) 836-8000

*Attorneys for Petitioner*
*Charter Communications, Inc.*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** _____

**Short Case Caption:** <u>In re Charter Communications, Inc.</u>_____

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes <u>7,695</u> words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>06/16/2023</u>_____     Signature: <u>/s/ Daniel Reisner</u>_____

Name: <u>Daniel Reisner</u>_____

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 16, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.

I further certify that on June 16, 2023, I caused a copy of the foregoing to be served on the following counsel of record and district court judge by Federal Express and by electronic mail at the following addresses:

Darlene F. Ghavimi
Matthew A. Blair
**K&L Gates, LLP**
2801 Via Fortuna, Suite 650
Austin, TX 78746
Tel.: (512) 482-6800
Darlene.Ghavimi@klgates.com
matthew.blair@klgates.com

James A Shimota
George C Summerfield
Jason A Engel
Katherine L. Allor
Samuel P. Richey
**K&L Gates, LLP**
70 West Madison Street, Suite 3100
Chicago, IL 60602
Tel.: (312) 807-4299
Fax: (312) 827-8000
jim.shimota@klgates.com
george.summerfield@klgates.com
jason.engel@klgates.com
katy.allor@klgates.com
samuel.richey@klgates.com

Connor J. Meggs
**K&L Gates, LLP**
10100 Santa Monica Blvd., 8th Floor
Los Angeles, CA 90067
Tel.: (310) 552-5031
connor.meggs@klgates.com

Peter E. Soskin
**K&L Gates, LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Tel.: 415-882-8046
Fax: 415-882-8220
peter.soskin@klgates.com

Nicholas F. Lenning
Courtney Neufeld
**K&L Gates, LLP**
925 Fourth Ave., Suite 2900
Seattle, WA 98104
Tel.: (206) 623-7580
Fax: (206) 623-7022
nicholas.lenning@klgates.com
courtney.neufeld@klgates.com

Andrea Leigh Fair
Jack Wesley Hill
**Ward, Smith & Hill, PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
Tel.: (903) 757-6400
Fax: (903) 757-2323
andrea@wsfirm.com
wh@wsfirm.com

Kenneth H. Bridges
**Bridges IP Consulting**
2113 19th Ave S
Nashville, TN 37212
Tel.: (615) 973-9478
bridgesip@icloud.com

*Counsel for Plaintiff-Respondent*
*Entropic Communications, LLC*

Hon. Rodney Gilstrap
U.S.D.C. – Eastern District of Texas
Sam B. Hall, Jr. Federal Building and United States Courthouse
100 East Houston Street
Marshall, Texas 75670
Tel.: (903) 935-3868
Fax: (903) 935-2295

Dated: June 16, 2023                                  */s/ Daniel Reisner*