No. 23-136

# In the United States Court of Appeals for the Federal Circuit

In re: CHARTER COMMUNICATIONS, INC.,
*Petitioner.*

On Petition for a Writ of Mandamus to the
United States District Court for the Eastern District of Texas
Case No. 22-cv-00125
Hon. Rodney Gilstrap, United States District Judge

**RESPONSE OF ENTROPIC COMMUNICATIONS, LLC TO
PETITION FOR WRIT OF MANDAMUS**

James A. Shimota
K&L Gates LLP
70 W. Madison Street, Suite 3100
Chicago, IL 60602

Nicholas F. Lenning
K&L Gates LLP
925 4th Ave, Suite 2900
Seattle, WA 98104

*Attorneys for Entropic
Communications, LLC*

June 27, 2023

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

|  |  |
|---|---|
| **Case Number** | 23-136 |
| **Short Case Caption** | In re: Charter Communications, Inc. |
| **Filing Party/Entity** | Entropic Communications, LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/27/2023

Signature: /s/ James A. Shimota

Name: James A. Shimota

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Entropic Communications, LLC | | Entropic Holdings, LLC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable                    ☑   Additional pages attached

| | | |
|---|---|---|
| Jason Engel (K&L Gates LLP) | Darlene Ghavimi (K&L Gates LLP) | George Summerfield (K&L Gates LLP) |
| Katherine Allor (K&L Gates LLP) | Samuel Patrick Richey (K&L Gates LLP) | Matthew Blair (K&L Gates LLP) |
| Kenneth Bridges (Bridges IP Consulting) | Wesley Hill (Ward Smith & Hill PLLC) | Andrea Fair (Ward Smith & Hill PLLC) |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)     ☐   No     ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable                    ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**4. Legal Representatives (continued)**

| Connor Meggs | Courtney Neufeld | Peter Soskin |
| (K&L Gates LLP) | (K&L Gates LLP) | (K&L Gates LLP) |

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................1

II.   STANDARD OF REVIEW ......................................................................4

III.  ARGUMENT............................................................................................6

      A.    The writ should automatically be denied because Charter has other
            adequate means to attain relief. ................................................................6

      B.    The Petition makes no showing of a clear and indisputable right to
            relief.........................................................................................................9

            1.    The district court applied the correct legal standards. ..............12

            2.    The district court marshaled and weighed a dense factual record
                  and properly exercised its discretion. ......................................13

                  a)    Charter has a place of business in the district. ...............14

                  b)    The place of business is regular and established............16

                  c)    The place of business is Charter's................................19

IV.   CONCLUSION........................................................................................20

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                           <u>**Pages**</u>

*Anderson v. City of Bessemer,*
    470 U.S. 564 (1985)..................................................................8

*Andra Grp., LP v. Victoria's Secret Stores, LLC,*
    2020 WL 1465894 (E.D. Tex. Mar. 26, 2020) ......................................17, 18

*Andra Grp., LP v. Victoria's Secret Stores, L.L.C.,*
    6 F.4th 1283 (Fed. Cir. 2021) ....................................11, 13, 17, 18

*Bankers Life & Cas. Co. v. Holland,*
    346 U.S. 379 (1953)..................................................1, 3, 4, 8, 11

*Celgene Corp. v. Mylan Pharms. Inc.,*
    17 F.4th 1111 (Fed. Cir. 2021) ..............................................11, 13

*Cheney v. U.S. Dist. Ct. for D.C.,*
    542 U.S. 367 (2004)................................................1, 2, 3, 4, 6, 9

*In re Cray,*
    871 F.3d 1355 (Fed. Cir. 2017) ...............................................5, 14

*In re BigCommerce, Inc.,*
    890 F.3d 978 (Fed. Cir. 2018) ........................................................5

*In re Google LLC,*
    949 F.3d 1338 (Fed. Cir. 2020) ...............................................5, 16

*In re HTC Corp.,*
    889 F.3d 1349 (Fed. Cir. 2018) ......................................4, 5, 6, 7, 8

*In re Medtronic, Inc.,*
    2021 WL 6112980 (Fed. Cir. Dec. 27, 2021) (unpublished) ........................7

*In re Micron Technology, Inc.,*
    875 F.3d 1091 (Fed. Cir. 2017) .....................................................5

*In re Monolithic Power Sys., Inc.,*
    50 F.4th 157 (Fed. Cir. 2022) .......................................................8

*In re TCO AS,*
    853 Fed. App'x 670 (Fed. Cir. July 13, 2021) ..............................................10

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (Fifth Cir. 2008) ..................................................10, 11

*In re Volkswagen Grp. of Am., Inc.,*
    28 F.4th 1203 (Fed. Cir. 2022) .........................................................5

*In re ZTE (USA) Inc.,*
    890 F.3d 1008 (Fed. Cir. 2018) ......................................................5

*Smith v. United States,*
    599 U.S. __, No. 21-1576, 2023 WL 4002949 (2023)...................................9

*Soverain IP, LLC v. AT&T, Inc.,*
    2017 WL 5126158 (E.D. Tex. Oct. 31, 2017)..............................................13

## Statutes

28 U.S.C. § 1292(b) ......................................................................1, 2, 3

28 U.S.C. § 1404......................................................................2, 5, 6, 7, 10

28 U.S.C. § 1406................................................................ 1, 2, 4, 5, 6, 7, 11, 20

28 U.S.C. § 2111 .......................................................................7

## Other

Federal Rule of Civil Procedure 12(b)(3) ..................................................1

## I.    INTRODUCTION

This Court has never issued a writ of mandamus ordering a district court to dismiss an action for improper venue under 28 U.S.C. § 1406(a), as discussed at *infra* at 4–6. Strike that—*no* court of appeals has ever issued a writ of mandamus ordering a case dismissed where the sole question presented is whether venue is proper under § 1406. Entropic has searched and located none, and the Petition cites none. Indeed, in a case concerning a district court's severance and transfer order for improper venue under § 1406(a), the Supreme Court held that "the writ was inappropriate." *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 145, 147 (1953). This follows from the Supreme Court's threshold requirement for mandamus: a "party seeking issuance of the writ [must] have no other adequate means to attain the relief he desires." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (quoting *Kerr v. United States District Court*, 426 U.S. 394, 403 (1976)). Alternative means of relief *do* exist where the question is one of proper venue, namely direct appeal or a request to certify an interlocutory appeal under 28 U.S.C. § 1292(b). Accordingly, a petition seeking a writ to dismiss solely for lack of proper venue should be a non-starter as a matter of law. The present Petition is one such petition.

Charter seeks a writ of mandamus reversing the denial of a Rule 12(b)(3) motion to dismiss for improper venue under 28 U.S.C. § 1406(a) and to order the district court to dismiss the case. Importantly, this is not a Petition involving any

review of a motion to transfer under 28 U.S.C. § 1404 for the convenience of the parties and witnesses. Indeed, this is not even a circumstance where Charter's motion under § 1406(a) requested either dismissal or transfer to an allegedly proper venue—Charter sought only dismissal before the district court and seeks only dismissal before this Court. These distinctions are critical. This Court has *never* issued a writ ordering dismissal for improper venue. Again, Charter cites no such case, and Entropic is aware of none.

The Petition devotes only one page—at the very end—to the crucial, gatekeeping legal requirement for mandamus that "no other adequate means" of relief exists. *Cheney*, 542 U.S. at 380–81. Charter cannot deny that it has two adequate means of addressing any alleged error in the district court's ruling on its motion to dismiss for improper venue. First, it may appeal after final judgment on direct appeal. Second, it could have requested certification for an interlocutory appeal from the district court itself under 28 U.S.C. § 1292(b). Charter seeks to avoid either avenue of relief, and, instead, comes to this Court a full six weeks after the district court's opinion to ask this Court to ignore the restrictions imposed by the All Writs Act and the Supreme Court's interpretation of that Act.

Charter's sole reason for claiming that it lacks an adequate remedy on direct appeal is that it believes the burden of litigating justifies mandamus. This argument has been consistently and repeatedly rejected by both the Supreme Court and this

Court, as discussed *infra* at 8–9. A direct post-judgment appeal is an available adequate remedy, the mere existence of which justifies denial of Charter's Petition. That Charter refuses to wait for a direct appeal after judgment is no foundation for mandamus. Notably, Charter never even addresses its alternative route of relief under § 1292(b).

Even if Charter could convince this Court to ignore these basic principles and entertain its Petition, that Petition would still fail because there is no "clear and indisputable" right to relief. *Cheney,* 542 U.S. at 380–81. If the Court reaches this stage of analysis, Charter must demonstrate its right to mandamus under a standard of review that is not merely deferential but highly deferential. "The supplementary review power conferred on the courts by Congress in the All Writs Act is meant to be used only in the exceptional case where there is a clear abuse of discretion or 'usurpation of judicial power.'" *Bankers Life*, 346 U.S. at 383.

The Petition does not come close to showing a "clear and indisputable" right to relief. The district court's decision is not off the rails—it is in fact the opposite. In an exceedingly thorough opinion, the district court properly applied the accepted legal standards to a deep factual record. Despite alluding to various "errors" allegedly committed, nothing in the Petition's scattershot attacks on the district court's fact-finding and the reasonable conclusions drawn therefrom are asserted to be a "clear abuse of discretion." *See Bankers Life*, 346 U.S. at 383.

3

In summary, the Petition seeks extraordinary relief for an ordinary situation: a defendant disagrees with a district court's ruling on a motion to dismiss and does not want to wait for a direct appeal from a final judgment or seek certification for an interlocutory appeal from the district court. This comes nowhere near meeting the extremely high thresholds for mandamus established by the Supreme Court and this Court's own precedent. This Court should deny the Petition.

## II.    STANDARD OF REVIEW

The appropriate standard of review is one of maximum deference—"clear abuse of discretion." *Bankers Life*, 346 U.S. at 383. This is because "[a] writ of mandamus is a drastic remedy available only in extraordinary circumstances." *In re HTC Corp.*, 889 F.3d 1349, 1352 (Fed. Cir. 2018). "Such a writ may issue only where the following conditions are met: (1) the petitioner must have no other adequate means to attain the relief desired; (2) the petitioner must demonstrate a 'clear and indisputable' right to the issuance of the writ; and (3) even if the first two prerequisites are met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id*. (quoting *Cheney*, 542 U.S. at 380–81 (cleaned up)).

Charter has identified *no* case where this Court granted a writ of mandamus compelling dismissal of an action for improper venue pursuant to § 1406(a). This Court has repeatedly explained that "mandamus review of improper-venue decisions

is generally inappropriate," because a mandamus petitioner "aggrieved by the denial of an improper-venue motion has an adequate remedy on appeal from a final judgment." *Id*. at 1353; *see also In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1207 (Fed. Cir. 2022) ("Ordinarily, mandamus relief is not available for rulings on motions under 28 U.S.C. § 1406 (a).").

To be sure, this Court *has* issued several writs of mandamus where § 1404 motions to transfer venue for convenience are involved. *See, e.g.*, *HTC*, 889 F.3d at 1352–53. It has also, in very rare circumstances, granted petitions for mandamus in the context of improper venue motions under § 1406(a), but only where those petitions presented "basic" and "undecided" questions, about which there was ample evidence of district court disagreement or confusion. *In re Cray, Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017); *In re Micron Technology, Inc.*, 875 F.3d 1091, 1095 (Fed. Cir. 2017); *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1016 (Fed. Cir. 2018); *In re BigCommerce, Inc.*, 890 F.3d 978, 981 (Fed. Cir. 2018); *In re Google LLC*, 949 F.3d 1338, 1342–43 (Fed. Cir. 2020); *Volkswagen 2022*, 28 F.4th at 1207. Charter has made no showing of a "basic" and "undecided" issue and has presented no evidence of disagreement or confusion among district courts here. Charter is asking this Court to enter uncharted territory that the Supreme Court has made clear the Courts of Appeal must avoid.

### III.    ARGUMENT

### A.    The writ should automatically be denied because Charter has other adequate means to attain relief.

Because mandamus is a "drastic remedy," a petitioner must first demonstrate that it has "no other adequate means to attain the relief desired." *HTC*, 889 F.3d at 1352 (quoting *Cheney*, 542 U.S. at 380). This is "designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Id*. (quoting *Cheney*, 542 U.S. at 380–81). Here, Charter relegates this threshold requirement to nary a page at the close of its brief—and for good reason: the Petition cannot make the required showing.

The Petition instead sidesteps the proper analysis by muddling together law involving convenience-based transfer motions under § 1404—from which defendants ordinarily *do not* have adequate remedies—with motions seeking dismissal or transfer under § 1406(a)—from which defendants *do* have adequate remedies on direct or interlocutory appeal. This Court has confirmed this latter principle many times: "a defendant aggrieved by the denial of an improper-venue motion has an adequate remedy on appeal from a final judgment." *Id.* at 1352–53. "Specifically, if after judgment venue is determined to have been improper, and the improper-venue objection was not waived, the appellants will be entitled to assert it on appeal and, if the objection is sustained, obtain from the appeals court an order vacating the judgment and directing the remand of the action to the appropriate

6

venue.'" *Id.* at 1353 (quoting *Gulf Research & Dev. Co. v. Leahy*, 193 F.2d 302, 304–05 (3d Cir. 1951) (cleaned up)); *see also In re Medtronic, Inc.*, 2021 WL 6112980, at *2 (Fed. Cir. Dec. 27, 2021) (unpublished) ("Unlike with motions to transfer under § 1404(a), mandamus ordinarily is unavailable for immediate review of rulings on motions asserting lack of venue under § 1400(b), because post-judgment appeal generally is an adequate remedy for such violations.").

The Petition overwhelmingly and erroneously relies upon cases involving motions to transfer under § 1404, which is concerned with "the convenience of [the] parties and [the] witnesses." 28 U.S.C. § 1404(a). Those cases rest upon the notion that there is no adequate remedy available for § 1404 issues by an appeal after judgment. Because "mere inconvenience does not support a showing of *harmful* error under 28 U.S.C. § 2111 and Fed. R. Civ. P. 61 on appeal after judgment," *HTC*, 889 F.3d at 1352 n.5, logically there may be nothing the Court of Appeals can do about a denial of a § 1404(a) transfer motion with which the Court disagrees. This is not the case for the question of proper venue under § 1406(a), where it is settled law that a post-judgment appeal can correct an erroneous ruling on proper venue. *Id.* at 1352–53.

Aside from quoting inapplicable case law, Charter's sole argument that it has no alternative relief is the assertion that Charter has been sued in the Eastern District of Texas *in other cases* and Charter does not want to litigate those cases through trial

before it can contest venue on appeal. Pet. at 31–32. This Court and the Supreme Court, however, have rejected this exact argument many times, explaining that "the extraordinary writs cannot be used as substitutes for appeal, even though hardship may result from delay and perhaps unnecessary trial." *HTC*, 889 F.3d at 1353–54 (quoting *Bankers Life*, 346 U.S. at 383) (collecting cases in accord). Indeed, to do otherwise—to hold that the mere cost of litigation alone warrants mandamus— "would clearly undermine the rare nature of its form of relief and make a large class of interlocutory orders routinely reviewable." *In re Monolithic Power Sys., Inc.*, 50 F.4th 157, 160–61 (Fed. Cir. 2022) (quoting *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011)).

An endless list of potential errors could lead to a trial where there otherwise would not have been one—from improper findings of venue, to erroneous *Markman* rulings, to erroneous denials of summary judgment, and so forth. Such errors are regrettable, but the organization of the judicial system cannot be sustained without those risks. Trial courts are not minions, constantly supervised by the courts of appeal as they go about their business. The trial courts and their trials are the "main event" not a "tryout on the road." *Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)). This is why the law so constrains the availability of mandamus.

Notably, while *civil* defendants like Charter (or Entropic) might suffer from the risk, however small, that a finding below of proper venue is wrong, it is surely less burdensome than the harm to life and liberty a *criminal* defendant suffers when he or she faces retrial in a new venue. Yet even in criminal cases there is no broad right to test proper venue on mandamus, even though the law authorizes putting the defendant through another full criminal trial in the correct venue if the first is held improper on appeal. *See Smith v. United States*, 599 U.S. __, No. 21-1576, 2023 WL 4002949 (2023). In summary, precedent recognizes that Charter's complaints of potential harm do not support mandamus in questions of proper venue because the post-judgment appeal is an adequate remedy.

It is indisputable that adequate remedies are available by means other than mandamus. That Charter would rather not pursue those adequate remedies cannot justify mandamus. In the presence of adequate alternatives, the Petition must be denied and the Court's inquiry must come to an end.

## B.    The Petition makes no showing of a clear and indisputable right to relief.

Even if this Court were to examine the merits of the Petition, the Petition still must be denied because it fails to show the required "clear and indisputable right" to a writ of mandamus. *Cheney* 542 U.S. at 380–81. That high burden means that district court decisions, if reviewed, are reviewed under "a highly deferential standard, under which [the Court] must leave the district court's decision

undisturbed unless it is clear that the facts and circumstances are without any basis for a judgment of discretion." *In re TCO AS*, 853 Fed. App'x 670, 671 (Fed. Cir. July 13, 2021) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 n.7 (Fifth Cir. 2008) (cleaned up)).

Here, the Petition is based on the wrong standard. Indeed, it omits discussion of the proper standard. Citing *Volkswagen 2008*—a § 1404 case—the Petition recites at the outset that "[a] district court abuses its discretion when it relies on clearly erroneous factual findings, erroneous conclusions of law, or misapplies the law to the facts," but the Petition omits the very next line—"[o]n mandamus review, we review for these types of errors, but we only will grant mandamus relief when such errors produce a patently erroneous result." 545 F.3d at 310; *see* Pet. at 13. Throughout the Petition, Charter asserts the district court "abused its discretion" but never actually asserts—*anywhere in its Petition*—that any of the alleged errors rise to the level of "a patently erroneous result." *See* Pet. at 1.

The only text that more-or-less matches the correct standard of review is Charter's single statement that the district court "clearly abused its discretion because it reached an erroneous result . . . ." Pet. at 19. But even this is plainly wrong—an "erroneous result" is *not* a "clear abuse of discretion"; only a "patently erroneous result" is. Charter's muddling of the standard of review is exactly what the Fifth Circuit and others have cautioned against: courts "must be careful lest they

suffer themselves to be misled by labels such as 'abuse of discretion' and 'want of power' into interlocutory review of nonappealable orders on the mere ground that they may be erroneous." *Volkswagen 2008*, 545 F.3d at 310 (quoting *Will v. United States*, 389 U.S. 90, 98 n.6 (1967)). Indeed, the Supreme Court, in an opinion holding that mandamus was inappropriate in the § 1406(a) context involving the district court's grant of a motion to transfer, explained that a district court's decision to sever and transfer part of the case was not appropriate for mandamus review "even if erroneous" because it "involved no abuse of judicial power." *Bankers Life*, 346 U.S. at 148.

Charter's reliance upon the wrong standard of review (and making no showing under the correct one) is clear from the case law upon which Charter relies. The Petition cites throughout to *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283 (Fed. Cir. 2021), and *Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111 (Fed. Cir. 2021), neither of which are mandamus cases. *See, e.g.* Pet. at 2. Both were direct appeals decided under *de novo* review. *See Andra*, 6 F.4th at 1287; *Celgene*, 17 F.4th at 1119. Charter has not set for itself the correct legal hurdle and certainly has not shown that it overcomes that hurdle. Again, this should result in automatic denial.

Although the Petition should be dismissed based on these defects alone, it ultimately would not matter. Under any standard of review, the district court's findings and judgment are entirely correct.

### 1.    The district court applied the correct legal standards.

Strangely, the Petition commences by jumping ahead and attacking the district court's *alternative* holding as to the third *Cray* factor. Pet. at 13. Specifically, Charter asserts that the district court used "an erroneous legal standard" in concluding that the physical store locations of Spectrum Gulf Coast are properly imputed to Charter for purposes of venue. *Id.*; Appx19. As an initial matter, this argument *does not matter* unless the district court's primary holding—that Charter ratified those locations as its own—also is patently erroneous (and, as addressed further below, it is not). The Court therefore need not even reach this argument unless it also concludes that the district court clearly abused its discretion in finding ratification.

In any event, the Petition misrepresents (or misunderstands) what the district court held. The Petition alleges that the district court "*only* considered whether CCI acted as a 'single enterprise'" and "disregarded any inquiry of whether corporate separateness was maintained." Pet. at 15 (emphasis in original). This is not true. The opinion below contains an entire section titled "Lack of Corporate Separateness." Appx16. There, the district court expressly held that Charter's subsidiaries

12

"disregard their separateness from Charter and act as a single enterprise." Appx18. The court also included a complete analysis of the difference between ratification and imputation, and concluded that "corporate separateness" is a "distinct theor[y]." Appx12–13. This is the correct legal standard and the same one used in the cases Charter cites. *See Celgene*, 17 F.4th at 1126 ("Plaintiffs must essentially demonstrate that in all aspects of the business, the two corporations actually functioned as a single entity"); *Andra Grp.,* 6 F.4th at 1289 (citing Wright & Miller, Fed. Prac. & Proc. § 3823, which states "if the corporations disregard their separateness and act as a single enterprise, they may be treated as one for purposes of venue"); *Soverain IP, LLC v. AT&T, Inc.*, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017) (same).

Considerable evidence—a veritable mountain—supports the district court's holding that the separateness of the immense number of Charter's subsidiaries is disregarded as a matter of course within the daily operation of Charter's enterprise. Appx19. The district court's well-founded factual findings and its conclusions therefrom speak for themselves and thus will not be repeated needlessly here. Any examination of the opinion below confirms that the district court did not clearly abuse its discretion.

> **2. The district court marshaled and weighed a dense factual record and properly exercised its discretion.**

Next in the scattered attack on the district court's opinion, the Petition walks through each of the *Cray* factors and simply repeats the same factual arguments that

the district court considered and rejected. Though Charter urges substituting its own judgment for that of the trial court, none of Charter's assertions of error rise even close to the level of "patently erroneous" that would be required for issuance of a writ.

### a)    Charter has a place of business in the district.

To satisfy the first element of the *Cray* analysis, Charter must have a "physical place in the district." *Cray*, 871 F.3d at 1360. A "place" must be a "physical, geographical location in the district from which the business of the defendant is carried out." *Id*. at 1362. There is no dispute, either here or before the district court, that there are "four [Spectrum] stores in the district." Pet. at 20. The only question before the district court therefore was whether "the business of [Charter] is carried out" at these locations. *See* Appx4.

The district court again relied on a considerable number of facts in holding that Charter's business is carried out at these locations. Appx4–6. Before the district court, Charter made the same arguments it does here—that a subsidiary leases and operates these stores and that the stores do not perform Charter's business because they are branded "Spectrum" and not Charter. Appx4, Appx362. The first argument was properly rejected as irrelevant. Appx6. This *Cray* factor does not ask whether the location may be imputed or whether the defendant has ratified it, but rather

simply whether the defendant's business is carried out there. Charter's attempt to import imputation into the first *Cray* factor is unsupported by law.

As to the argument that Charter's use of the brand name "Spectrum" is a shield to venue, the district court correctly rejected it. Appx6. Charter's business—its only business—is the services *Charter* provides under the Spectrum brand. The district court relied on voluminous evidence, perhaps the most stark being the very first paragraph of Charter's 2022 SEC 10-K statement, quoted in the court's opinion:

> We are a leading broadband connectivity company and cable operator serving more than 32 million customers in 41 states through our ***Spectrum*** brand. Over an advanced high-capacity, two-way telecommunications network, we offer a full range of state-of-the-art residential and business services including ***Spectrum*** Internet®, TV, Mobile and Voice. For small and medium-sized companies, ***Spectrum*** Business® delivers the same suite of broadband products and services coupled with special features and applications to enhance productivity, while for larger businesses and government entities, ***Spectrum*** EnterpriseTM provides highly customized, fiber-based solution. ***Spectrum*** Reach® delivers tailored advertising and production for the modern media landscape. We also distribute award-winning news coverage and sports programming to our customers through ***Spectrum*** Networks.

Appx18, Appx581 (emphasis in original). Charter's insistence that the 10-K mentions subsidiaries is of no moment—Charter says the same thing to the public on its website, with zero qualifiers about subsidiaries. Pet. at 17; Appx18, Appx586. Indeed, the mention of subsidiaries actually confirms a central point of the holding

below—despite all those subsidiaries there is *one* enterprise here, *one* single business spanning the whole collection of entities: "[w]e are a leading broadband connectivity company and cable operator . . . ." Appx18, Appx581.

Charter is taking an extraordinary position. Despite telling the public and the government, under severe penalties for false statements, that Charter serves "more than 32 million customers in 41 states through our ***Spectrum*** brand," Charter asks the courts to hold it does not actually conduct any business in any of those states and therefore cannot be sued in any of them. *See* Appx586. The district court properly concluded otherwise, and correctly applied the factual record to reject Charter's extraordinary position. Appx6.

### b) The place of business is regular and established.

Charter next challenges the district court's holding that the stores in the district are "regular and established." Appx10. This factor requires "the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" Appx10 (quoting *In re Google*, 949 F.3d at 1345). Again, there is no dispute that there are Spectrum-branded stores staffed with employees in the district. The only dispute is whether those employees are Charter's.

The district court weighed the factual record and thoroughly analyzed all three factors in the test for agency, ultimately concluding that the employees in the district

16

are Charter's agents. Appx12. Charter takes issue with various findings and conclusions that the district court made—specifically Charter alleges the district court committed error "by incorrectly reading the management agreements between CCI and the LLCs and by relying on other alleged facts that this Court rejected in *Andra* as insufficient to establish agency." Pet. at 22. Once again, this objection merely seeks to substitute Charter's judgment for that of the district court's, and is nowhere close to the type of error necessary to support mandamus.

The attack on the district court is also substantively wrong. Charter claims this case is like *Andra*. Pet. at 22. Charter's comparison to *Andra* is flawed for two reasons. First, as a procedural matter, in *Andra*, this Court conducted *de novo* review on direct appeal (and *affirmed* the district court)—a far cry from the highly deferential review that this Court is required to apply here. Second, the facts here are entirely different in both form and substance from those in *Andra*. In terms of form, unlike Charter's single enterprise, *Andra* involved a lawsuit seeking to assert venue over a parent holding company with several wholly-owned *distinct businesses*, one of which was Victoria's Secret, but also including at least Bed Bath & Beyond. *See, e.g.*, *Andra Grp., LP v. Victoria's Secret Stores, LLC*, 2020 WL 1465894, at *1 (E.D. Tex. Mar. 26, 2020) ("LBI stands as the corporate parent of many different retailers in the apparel and home product field."). Within the branches of that corporate tree, the businesses were not unified enterprises. Instead, "[d]ifferent parts of the

VICTORIA'S SECRET® business [were] operated by different subsidiaries under the LBI umbrella." *Id*. The factual record here confirms Charter is not organized as separate, distinct businesses at all—it is one nationwide enterprise. All the Charter subsidiaries are part of that enterprise, with the various subsidiaries serving as containers for various functions (such as employing all personnel, which are then assigned to do work within the other entities). Appx17–19. There is a stark difference between a true holding company owning many different businesses as in *Andra*, and here, where Charter's single enterprise may span across many LLC's on paper, but their formation and governance are dictated by the parent, they are managed by the parent's officers, they are staffed with the same personnel and board members as the parent, and they all participate in the same unified enterprise. Appx17–19.

*Andra* is also entirely different in substance because the detailed evidence of control is so different. In *Andra* the party opposing relief (the plaintiff) argued that the parent had the right to control the subsidiary's employees based solely upon "various public filings by [the parent company] that speak in broad terms about real estate holdings and investments" and a "Code of Conduct" that employees were required to sign. 6 F.4th at 1288. Beyond that, the plaintiff in *Andra* simply made various allegations of control unsupported by factual evidence. On appeal, this Court found that the allegations of control were "directly contradicted" by testimony from a subsidiary employee about the exercise of control, and thus the element of agency

was missing. *Id*. In sum, vague statements about real estate and investments and a Code of Conduct were contradicted by sworn testimony and thus did not support venue. The facts in this case are wholly different. Here, there is a much deeper factual record, and (as the district court found) all the facts point in the same direction. *See* Appx19. The district court relied on, *inter alia*, (1) numerous corporate agreements, (2) proof of Charter's corporate department structure, headed by Charter officers across the LLCs, (3) numerous public documents and federal court filings, and (4) the deposition testimony of Charter's corporate representatives to conclude that Charter does have the right to control and direct the employees in the district. Appx19.

In summary, the district court relied upon a considerable factual record and the correct legal standards. There is no error here at all, and nothing the Petition argues implicates any alleged error rising to the level required for mandamus.

### c)    The place of business is Charter's.

Finally, Charter attacks the district court's primary alternative holding on this factor, that Charter ratified the physical locations as its own. Appx16. Again, Charter does not assert that the district court stated or applied the wrong law, Charter simply asserts that "the district court did not [actually] engage in th[at] analysis." Pet. at 27. To make this argument, Charter returns to its insistence that Spectrum is somehow a distinct thing from Charter. It is not. The district court correctly found that

"Spectrum" is "just a brand name or trade name" that all Charter entities use nationwide for its customer-facing operations. Appx5−6. Among the facts the court relied upon were sworn testimony, SEC statements, the lease agreements in the judicial district signed by Charter, and more. Appx15−16. Charter's objections are more of the same disagreements with the conclusions reached by the district court. These disagreements are wrong, but, most importantly, in no event come anywhere close to a clear abuse of discretion.

## IV.   CONCLUSION

Returning to the starting point, this Court has never issued a writ of mandamus ordering a case be dismissed where the sole question presented is whether venue is proper under § 1406. Precedent compels denial of such petitions because alternative remedies exist, namely certified interlocutory and direct appeal. The Court should decline Charter's invitation to break new ground in this case, particularly given the district court's thorough, factually-rich decision correctly applying settled legal principles.

Dated: June 27, 2023

Respectfully submitted,

/s/ James A. Shimota

James A. Shimota
jim.shimota@klgates.com
K&L Gates LLP
70 W. Madison Street
Suite 3100
Chicago, IL 60602
Tel: (312) 372-1121

Nicholas F. Lenning
nicholas.lenning@klgates.com
K&L Gates LLP
925 4th Ave, Suite 2900
Seattle, WA 98104
Tel: (206) 623-7580

*Attorneys for Entropic*
*Communications, LLC*

## CERTIFICATE OF SERVICE

I certify that on June 27, 2023, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.

I further certify that on June 27, 2023, I caused a copy of the foregoing to be served on the following counsel of record via electronic mail and the district court judge by FedEx:

Daniel Reisner
Elizabeth Long
Melissa Brown
David Benyacar
Albert Boardman
**Arnold & Porter Kaye Scholer LLP**
250 West 55th Street
New York, New York 10019
daniel.reisner@arnoldporter.com
elizabeth.long@arnoldporter.com
melissa.brown@arnoldporter.com
david.benyacar@arnoldporter.com
albert.boardman@arnoldporter.com

Deron Dacus
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
ddacus@dacusfirm.com

*Counsel for Defendant-Petitioner Charter Communications, Inc.*

Hon. Rodney Gilstrap
U.S.D.C. – Eastern District of Texas
Sam B. Hall, Jr. Federal Building and United States Courthouse
100 East Houston Street
Marshall, Texas 75670
Tel.: (903) 935-3868

Dated: June 27, 2023

/s/ James A. Shimota
James A. Shimota

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  23-136

**Short Case Caption:**  In re: Charter Communications, Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑  the filing has been prepared using a proportionally-spaced typeface and includes  4,894  words.

☐  the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐  the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 06/27/2023         Signature:  /s/ James A. Shimota

                         Name:  James A. Shimota