No. 23-136

# In the United States Court of Appeals for the Federal Circuit

IN RE: CHARTER COMMUNICATIONS, INC.,

*Petitioner.*

On Petition for a Writ of Mandamus to the
United States District Court for the Eastern District of Texas
Case No. 22-CV-0125
Hon. Rodney Gilstrap, United States District Judge

## REPLY IN SUPPORT OF
## PETITION FOR A WRIT OF MANDAMUS

Daniel Reisner
Elizabeth Long
Michael Lynn
Melissa Brown
**Arnold & Porter Kaye Scholer LLP**
250 West 55th Street
New York, New York 10019
Tel.: (212) 836-8000
Fax: (212) 836-8689

*Attorneys for Petitioner
Charter Communications, Inc.*

June 30, 2023

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** 23-136

**Short Case Caption** In re Charter Communications, Inc.

**Filing Party/Entity** Charter Communications, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/30/2023

Signature: /s/ Daniel Reisner

Name: Daniel Reisner

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| Charter Communications, Inc. | | Liberty Broadband Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| David Benyacar<br>(Arnold & Porter) | Albert Boardman<br>(Arnold & Porter) | Deron R. Dacus<br>(The Dacus Firm, PC) |
| Amy L. DeWitt<br>(Arnold & Porter) | Marc Cohn<br>(Arnold & Porter) | Palak M. Parikh<br>(Arnold & Porter) |
| Jacob Bass<br>(Arnold & Porter) | Paul Margulies<br>(Arnold & Porter) | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑    Yes (file separate notice; see below)    ☐    No    ☐    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**FORM 9A. Notice of Related Case Information**

**Form 9A (p. 1)**
**March 2023**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>NOTICE OF RELATED CASE INFORMATION</u>

| | |
|---|---|
| **Case Number** | 23-136 |
| **Short Case Caption** | In re Charter Communications, Inc. |
| **Filing Party/Entity** | Charter Communications, Inc. |

**Instructions:** Do not duplicate information. The notice must only be filed at the time of filing the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. *See* Fed. Cir. R. 47.5(b). Attach additional pages as needed. This notice must not be included in a motion, petition, related response, or brief; please only include the Certificate of Interest (Form 9) in those documents.

1. **Related or prior cases.** Provide the case title, case number, and originating tribunal for each case. Fed. Cir. R. 47.5(b)(1).

Entropic Comms., LLC v. Charter Comms., Inc., No. 2:23-CV-00050-JRG (E.D. Tex.)

Entropic Comms., LLC v. Charter Comms., Inc., 2:23-CV-00051-JRG (E.D. Tex.)

Entropic Comms., LLC v. Charter Comms., Inc., 2:23-CV-00052-JRG (E.D. Tex.)

Touchstream Technologies, Inc. v. Charter Comms., Inc., et al., 2:23-cv-00059-JRG (consolidated member case of lead case 23-cv-00060) (E.D. Tex.)

☐   Additional pages attached

2. **Names of all parties involved in the cases listed above.** Do not duplicate the names of parties. Do not relist the case information. Fed. Cir. R. 47.5(b)(2)(A).

Charter Communications, Inc.

Entropic Communications, LLC

Touchstream Technologies, Inc.

☐ Additional pages attached

3. **Names of all law firms, partners, and associates in the cases listed above.** Do not duplicate the names of law firms, partners, and associates. Do not relist case information and party names. Fed. Cir. R. 47.5(b)(2)(B).

Arnold & Porter Kaye Scholer LLP (David Benyacar, Albert Boardman, Melissa Brown, Amy L. DeWitt, Dina Hayes, Elizabeth Long, Daniel Reisner, Robert Stout); Winston & Strawn (Krishnan Padmanabhan, Saranya Raghavan); The Dacus Firm, PC (Deron R. Dacus); Shook Hardy & Bacon LLP (Michael W. Gray, Andrew Long, Anita Liu, Megan Mitchell); K&L Gates, LLP (James A Engel, Darlene Ghavimi, George Summerfield, James A. Shimota, Melissa Haulcomb, Peter Soskin); Ward, Smith & Hill, PLLC (Andra L. Fair, Jack Wesley Hill); Bridges IP Consulting (Kenneth H. Bridges)

☐ Additional pages attached

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/30/2023

Signature: /s/ Daniel Reisner

Name: Daniel Reisner

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...........................................................................................1

II.   THE COURT SHOULD EXERCISE ITS DISCRETION TO ISSUE A
      WRIT OF MANDAMUS ...............................................................................2

III.  THE RIGHT TO MANDAMUS IS CLEAR AND INDISPUTABLE...........5

      1.    Respondent Fails To Contest That the District Court Relied On an
            Erroneous Legal Standard and Factual Findings To Impute the
            Presence Of Spectrum Gulf To CCI.......................................................5

      2.    CCI Does Not Have a Regular and Established Place of  Business
            In the District......................................................................................10

            (a)    CCI Does Not Have a "Place Of Business" In the
                   District ..........................................................................10

            (b)    CCI Has No Agents Conducting Business in the
                   District ..........................................................................11

            (c)    Entropic Fails to Demonstrate That CCI Ratified Any
                   Place Of Business in the District ....................................14

IV.   CONCLUSION...........................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Andra Grp., LP v. Victoria's Secret Stores, LLC*,
  6 F.4th 1283 (Fed. Cir. 2021) ................................................................*passim*

*Celgene Corp. v. Mylan Pharms. Inc.*,
  17 F.4th 1111 (Fed. Cir. 2021) ...........................................................7, 8, 9, 16

*Cheney v. U.S. Dist. Court for D.C.*,
  542 U.S. 367 (2004)...................................................................................2, 3

*Clay v. Palfinger USA, LLC*,
  20-cv-724, 2021 WL 430685 (W.D. Tex. Feb. 8, 2021) ...................................12

*Entropic Comms., LLC v. Charter Comms., Inc.*,
  23-cv-0051, Dkt. 24 (E.D. Tex.)..............................................................4

*Entropic Comms., LLC v. DIRECTV, LLC*,
  22-cv-00076-JRG, 2022 WL 19076758 (E.D. Tex. Oct. 24, 2022) .....................4

*Ericsson Inc. v. D-Link Corp.*,
  10-cv-473, 2013 WL 12044890 (E.D. Tex. June 20, 2013)..............................11

*In re BigCommerce, Inc.*,
  890 F.3d 978 (Fed. Cir. 2018) ..............................................................3

*In re Stingray IP Sols., LLC*,
  56 F.4th 1379 (Fed. Cir. 2023) ............................................................3

*In re ZTE (USA), Inc.*,
  890 F.3d 1008 (Fed. Cir. 2018) ..........................................................2, 3, 16

*Interactive Toybox, LLC v. The Walt Disney Co.*,
  17-cv-1137, 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018) .........................8, 10

*IPVX Patent Holdings, Inc. v. Broadvox Holding Co., LLC*,
  11-cv-0575, 2012 WL 13012617 (E.D. Tex. Sept. 26, 2012) ...........................9

*Mobius Risk Grp., LLC v. Glob. Clean Energy Holdings, Inc.*,
    10-cv-1708, 2011 WL 3568074 (S.D. Tex. Aug. 15, 2011)................................12

*Parallel Network Licensing LLC v. Arrow Elecs., Inc.*,
    21-cv-0714, 2022 WL 1597364 (E.D. Tex. May 19, 2022) ................................9

*Soverain IP, LLC v. AT&T, Inc.*,
    17-cv-0293, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017) ........................5, 7, 8

*United States v. Bestfoods*,
    524 U.S. 51 (1998)........................................................................................16

## **Statutes**

28 U.S.C. § 1400(b) ....................................................................................4

28 U.S.C. § 1406(a) ...............................................................................1, 2, 3

## I.    __INTRODUCTION__

Respondent Entropic Communications, LLC ("Entropic") does not attempt to address, until the end of its brief, the district court's erroneous conclusion that patent venue was proper over CCI based on the presence of a separate and distinct subsidiary in the district.  Entropic glosses over the fact that the district court misapplied the *Cray* factors by improperly commingling concepts of agency, ratification, and imputation, contrary to this Court's precedents.  Likewise, Entropic does not attempt to defend the district court's creation of a newly-minted "single enterprise" standard for imputation that disregarded factors that regional circuit law required the district court to consider prior to imputing the presence of a subsidiary to a parent corporation.

Instead, Entropic spends the majority of its brief on mandamus jurisdiction, asserting that mandamus is never appropriate to correct a district court's misapplication of 28 U.S.C. § 1406(a).  That directly contradicts this Court's precedent.  Many times, this Court has issued writs of mandamus to correct district courts' improper expansion of the patent venue statute—including decisions by the same district court judge.

The district court's decision turns the law of imputation on its head by disregarding the presumption of corporate separateness under its newly-created "single enterprise" standard, contrary to settled alter ego law in the Fifth Circuit.

This Court should issue a writ of mandamus and correct the district court's misapplication of the law.

## II.    THE COURT SHOULD EXERCISE ITS DISCRETION TO ISSUE A WRIT OF MANDAMUS

Entropic boldly, and without qualification, asserts in its first sentence that "[t]his Court has never issued a writ of mandamus ordering a district court to dismiss an action for improper venue under 28 U.S.C. § 1406(a)." Opp. 1. This is demonstrably false—so much so that even Entropic later admits that this Court "in very rare circumstances, granted petitions for mandamus in the context of improper venue motions under § 1406(a)." Opp. 5.

This Court, for example, recently granted a petition for a writ of mandamus in *In re Google LLC* where the relief sought, and granted, was an order directing the district court to "dismiss the case for lack of venue." 949 F.3d 1338, 1339 (Fed. Cir. 2020); *accord In re ZTE (USA), Inc.*, 890 F.3d 1008, 1010 (Fed. Cir. 2018) (same). That is the same relief that CCI seeks here.

Entropic also argues that mandamus is not appropriate unless this Court has already considered the issue presented or relief sought (*e.g.*, Opp. 1-2, 4), but provides no support for this contention. Nor can it; the decision to issue a writ of mandamus "is a matter vested in the discretion of the court to which the petition is made." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 391 (2004). And this Court has exercised its discretion to grant mandamus—regardless of subject

2

matter—"in narrow circumstances where doing so is important to 'proper judicial administration,' such as when an appellate court 'corrects a district court's answers to basic, undecided legal questions' concerning judicial administration matters." *In re Stingray IP Sols., LLC*, 56 F.4th 1379, 1382 (Fed. Cir. 2023) (cleaned up).

Entropic next contends that there are no circumstances in which mandamus is appropriate to review the denial of a motion to dismiss for improper venue under 28 U.S.C. § 1406(a) because there are other adequate remedies, *e.g.*, appeal after final judgment or interlocutory appeal. Opp. 1-2, 4-9. If that is correct, then there would be no situations where it would be proper for this Court to issue a writ of mandamus in a suit involving patent venue, which is obviously not the case. Yet, on the other hand, Entropic acknowledges that even where other remedies are available, there ***are*** circumstances in which this Court must correct a Section 1406 decision under the "judicial administration" standard. Opp. 5; *accord Stingray*, 56 F.4th at 1383; *Google,* 949 F.3d at 1342-43; *In re BigCommerce, Inc.*, 890 F.3d 978, 981 (Fed. Cir. 2018); *ZTE*, 890 F.3d at 1011. Entropic ignores that where mandamus is appropriate "under the narrow 'administration of justice' standard, [this Court has] not separately required petitioners to show satisfaction of *Cheney*'s three requirements," and has "granted mandamus relief without even citing the three requirements set out in *Cheney*." *Stingray*, 56 F.4th at 1382-83 (citations omitted).

3

Entropic further contends that "mere cost of litigation alone" is insufficient to warrant mandamus. Opp. 7-8. CCI never suggested that the cost of litigation was sufficient to justify mandamus. *See* Pet. 31. Rather, as explained in its Petition, mandamus is necessary to correct the district court's patently erroneous conclusions that are contrary to both this Court's precedents and other district court decisions within the Fifth Circuit regarding the standard for imputing the actions of a subsidiary to its parent and the application of agency, ratification, and imputation under Section 1400(b). *E.g.*, Pet. 4-5.

Furthermore, the district court has already issued two decisions that reflect an erroneous departure from the law applied by this Court and other district courts within the Fifth Circuit. *See* Appx1; *Entropic Comms., LLC v. DIRECTV, LLC*, 22-cv-00076-JRG, 2022 WL 19076758 (E.D. Tex. Oct. 24, 2022). The district court is likely to do the same in four other litigations pending against CCI in the Eastern District of Texas. Although the district court has yet to rule on CCI's venue motions in those litigations, Entropic has cited the district court's decision as a basis for the district court to deny CCI's venue-related motions in three of those cases. *E.g.*, *Entropic Comms., LLC v. Charter Comms., Inc.*, 23-cv-0051 (E.D. Tex.), Dkt. 24 at 1. Without mandamus relief, the district court's decision invites an influx of patent litigation against parent corporations in a district in which a subsidiary or related company has operations, even where the corporate forms are

maintained.  Issuing a writ of mandamus in this case will ensure uniformity among district courts and will clarify and correct the district court's incorrect application of the patent venue statute as it relates to the parent-subsidiary relationship where the corporate forms remain intact.

## III.    THE RIGHT TO MANDAMUS IS CLEAR AND INDISPUTABLE

Entropic incorrectly states that the Petition invokes the "wrong standard" of review.  Opp. 9-12.  In the "Issues Presented" and in the "Reasons the Writ Should Issue" sections of the Petition, CCI made clear that the question is whether the district court reached "patently erroneous result[s]" by abusing its discretion in misapplying the law, by misapplying the law to the facts, and by relying on clearly erroneous factual findings.  *E.g.*, Pet. 1, 13.

### 1.    Respondent Fails To Contest That the District Court Relied On an Erroneous Legal Standard and Factual Findings To Impute the Presence Of Spectrum Gulf To CCI

The district court erroneously stated that the "appropriate inquiry" when considering lack of corporate separateness, is whether CCI "and its subsidiaries 'act as a single enterprise.'"  Appx19 (citing *Soverain IP, LLC v. AT&T, Inc.*, 17-cv-0293, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017), *report and recommendation adopted*, 2017 WL 6452802 (Dec. 18, 2017)).  As explained in the Petition, that is not the "appropriate inquiry" (Pet. 13-19) and the district court abused its discretion by relying on an erroneous legal standard to conclude that the

presence of subsidiaries in the district should be imputed to CCI solely because they act as a "single enterprise."

Entropic argues that because the district court labeled a section of the decision "Lack of Corporate Separateness," and included "an analysis of the difference between ratification and imputation," the district court *ipso facto* applied the correct legal standard to the facts.[1]  Opp. 12-13.  That is incorrect. Nowhere in its analysis did the district court acknowledge the factors that a district court must consider under applicable Fifth Circuit law to determine a lack of corporate separateness.  Instead, the district court disregarded Fifth Circuit law and solely relied on purported facts that it believed supported its newly-created "single enterprise" standard.  That was a clear abuse of discretion that led to a patently erroneous result.  Importantly, Entropic does not even mention that the district court incorrectly stated the "appropriate inquiry" for lack of corporate separateness is whether CCI and the subsidiaries acted as a "single enterprise." And, noticeably absent from Entropic's response is any discussion regarding the district court's newfound "single enterprise" theory vis-à-vis the various factors

---

[1] Entropic does not explain why the Court need not reach the issue of imputation if it finds that the district court did not err in its ratification conclusion.  Opp. 12. Even though Entropic claims to have "addressed" why the district court's ratification holding was not patently erroneous later in its opposition, Entropic does not provide any further analysis or explanation.  *Compare* Opp. 12, *with* Opp. 19-20.

that must be considered under Fifth Circuit law to establish a lack of corporate separateness. *See* Pet. 15.

Entropic nonetheless states that "this is the correct legal standard and the same one used in the cases [CCI] cites." Opp. 13. Entropic is wrong. Those cases confirm that the district court did not apply the correct legal standard because they make clear that "even if a parent corporation controls a subsidiary's operations and the companies share a unitary business purpose, the subsidiary's presence in a venue cannot be imputed to the parent absent disregard for corporate separateness." *Soverain*, 2017 WL 5126158, at *1 (stating that corporations "may be treated as one for purposes of venue" if "the corporations disregard their separateness ***and*** act as a single enterprise." (emphasis added; citation omitted)); *Andra Grp., LP v. Victoria's Secret Stores, LLC*, 6 F.4th 1283, 1289 (Fed. Cir. 2021) (stating that the "threshold inquiry when determining whether the place of business of one company can be imputed to another, related company ***is whether they have maintained corporate separateness***." (emphasis added)); *Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1125-26 (Fed. Cir. 2021) (quoting *Andra* for lack of corporate separateness, listing "considerations" the regional circuit court "looks at" in an alter ego analysis, which is a "'notoriously difficult' burden" (citations omitted)).

Entropic similarly does not respond to arguments that the district court misapplied the law governing lack of corporate separateness to the facts (Pet. 15-16) or that the district court relied on erroneous factual findings (Pet. 16-19). Entropic merely responds that the "district court's well-founded factual findings and its conclusions therefrom speak for themselves" and "will not be repeated needlessly here." Opp. 13. That fails to respond to the district court's clear disregard for well-established principles that: (1) a "subsidiary's presence in a venue cannot be imputed to the parent absent disregard for corporate separateness," even "if a parent corporation controls a subsidiary's operations and the companies share a unitary business purpose" and there exists an "interdependence" between the entities, *Soverain*, 2017 WL 5126158, at *1 (citations omitted); (2) to find lack of corporate separateness, "[t]here must be a 'plus factor, something beyond the subsidiary's mere presence within the bosom of the corporate family,'" *Interactive Toybox, LLC v. The Walt Disney Co.*, 17-cv-1137, 2018 WL 5284625, at *3 (W.D. Tex. Oct. 24, 2018); (3) even "100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations," *id.* (citation omitted); *Celgene*, 17 F.4th at 1126; and (4) corporate separateness is maintained even where there is "shared marketing, branding, and trade names" as well as a

parent's involvement in alleged infringing conduct or in signing lease documents. *Celgene*, 17 F.4th at 1126-27.

Entropic also has no answer for the district court's erroneous reliance on "filings" made well *before* 2022 and altogether ignores that "[v]enue is determined by the facts and situation as of the date suit is filed." Pet. 16-17 (quoting *Parallel Network Licensing LLC v. Arrow Elecs., Inc.*, 21-cv-0714, 2022 WL 1597364, at *3 (E.D. Tex. May 19, 2022)). Nor does Entropic dispute that the district court effectively held, without any support, that a manager that acts on behalf of an LLC is one and the same with the LLC it manages. As described in the Petition, settled law is clear that this contractual relationship alone is insufficient to support imputation where, as here, the corporate forms are maintained. Pet. 17-18; *IPVX Patent Holdings, Inc. v. Broadvox Holding Co., LLC*, 11-cv-0575, 2012 WL 13012617, at *3 (E.D. Tex. Sept. 26, 2012) (considering alter ego argument in patent venue context, and rejecting argument that a parent/manager "controlled" the subsidiary/managed entity, concluding "there is no evidence that the control exerted by [the parent-defendant] is greater than that 'normally associated with common ownership and directorship.'" (citation omitted)).

### 2. CCI Does Not Have a Regular and Established Place of Business In the District

#### (a) CCI Does Not Have a "Place Of Business" In the District

CCI agrees with Entropic that the first *Cray* factor does ***not*** call for an imputation or ratification analysis. *See* Opp. 14. However, Entropic ignores that the district court, not CCI, "import[ed] imputation into" the analysis by finding that CCI carried out its business in the district because "[CCI] is Spectrum, and Spectrum is [CCI]." Opp. 15; *but see* Pet. 20; Appx5-Appx6.

Not only does Entropic fail to respond to this argument, but Entropic's response ***confirms*** that the district court relied on erroneous conclusions of law because Entropic ***agrees*** that "a central point" of the district court's "holding" is that "despite all those subsidiaries there is one enterprise here, one single business spanning the whole collection of entities." Opp. 15-16 (emphases omitted); *id.* at 16 (citing Appx18, which is the district court's discussion regarding lack of corporate separateness). Thus, Entropic's only argument in support of the district court's decision is to disregard the corporate forms.

Yet, both the district court and Entropic disclaim the need to pierce the corporate veil under this first *Cray* factor. Therefore, the district court was required to "presume[ ] that corporations exist as separate entities." *Interactive Toybox*, 2018 WL 5284625, at *3. Neither the district court, nor Entropic, have heeded that presumption under the first *Cray* factor. On this basis, the district

10

court abused its discretion and reached a patently erroneous conclusion—that a parent corporation carries out its business in any location owned or operated by a subsidiary without reference to the corporate forms.

### (b) CCI Has No Agents Conducting Business in the District

Contrary to Entropic's representation, CCI does not argue that the district court erred under the second *Cray* factor solely because "this case is like *Andra*." Opp. 17-18. Rather, CCI contends that the district court abused its discretion and reached a patently erroneous result because it disregarded controlling law, *i.e.*, *Andra*. Pet. 21-27.

Nonetheless, Entropic attempts to distinguish *Andra* because it involved a lawsuit against a parent holding company and "several wholly-owned *distinct businesses*," whereas CCI is purportedly "one nationwide enterprise," and "is not organized as separate, distinct businesses[.]" Opp. 17-18 (emphasis in original). Entropic improperly assumes that CCI and the subsidiaries lack corporate separateness—in fact, the record is undisputed that they are organized as distinct and separate businesses—thereby acknowledging the only way to establish that CC LLC employees are agents of CCI is to pierce the corporate veil.

This alleged distinction misses the mark because "[i]t is bedrock corporate law that separate corporate entities are presumed separate." *Ericsson Inc. v. D-Link Corp.*, 10-cv-473, 2013 WL 12044890, at *4 (E.D. Tex. June 20, 2013).

11

This presumption applies to *all* separate corporate entities, including "to a parent corporation and its separate corporate subsidiary as well, presuming, again, they are distinct legal entities." *Mobius Risk Grp., LLC v. Glob. Clean Energy Holdings, Inc.*, 10-cv-1708, 2011 WL 3568074, at *4 (S.D. Tex. Aug. 15, 2011); *Clay v. Palfinger USA, LLC*, 20-cv-724, 2021 WL 430685, at *6 (W.D. Tex. Feb. 8, 2021) ("Texas law presumes that separate companies, ***even if related***, are distinct entities" (emphasis added)), *report and recommendation adopted*, 2021 WL 8053491 (Feb. 26, 2021). CCI maintains all corporate formalities from its separate and distinct subsidiaries, and therefore enjoys the presumption that CCI and the subsidiaries exist as corporate entities.[2] Pet. 5-7. Entropic's interpretation of *Andra* is therefore misguided.

Entropic also contends that *Andra* is "different in substance because the detailed evidence of control is so different," and there is a "much deeper factual record" here. Opp. 18-29. Both of those assertions are incorrect. *Andra* involved a fully-developed factual record as to venue and this Court rejected similar agency arguments and facts that Entropic presents here: (1) corporate representatives

---

[2] Entropic does not respond to CCI's similar arguments that the district court erroneously infused imputation concepts under the second *Cray* factor because it was "persuaded that [CCI] is Spectrum and Spectrum is [CCI]" on the basis that CCI "placed their brand or trade name on the building, and at trucks parked at" locations. Pet. 26-27. Nor did Entropic respond to the argument that the district court recited the wrong standard—that CCI "holds the locations in this District out as its own"—in reaching its erroneous conclusion. *Id.*

contradicted Entropic's representation that CCI is involved in the hiring and firing of employees, *Andra*, F.4th at 1288-89, and to the extent officers of both CCI and CC LLC are involved in the hiring and firing of CC LLC employees, they are involved "in their capacity as [CC LLC] employees," not in their capacity as CCI officers, Pet. 22; (2) the plain language of the CCO LLC management agreement does not address any "right" of CCI to control employees; it only allows CCI to provide "*advice* concerning" personnel decisions or to provide "*review, consultation and advice* concerning" personnel or operations or policies and procedures, which is different than directing an employee and does not evidence the right to control an employee's actions, Pet. 22-23; (3) statements in an annual shareholder report are not sufficient to establish agency because they cover the entire Spectrum brand, and any reference to "we" does not mean CCI and "could include the individual subsidiar[ies]" providing services under the Spectrum brand, *Andra*, 6 F.4th at 1289; Pet. 23 & n.12; and (4) even if CCI did control the website that promotes Spectrum jobs or locations, this Court has explained that "close control of . . . the website does not equate to 'the right to direct or control' employees at the physical" locations in the district, *Andra*, F.4th at 1289; Pet. 24.

Entropic also does not dispute that the district court failed to explain how the "*ability to materially control* the employees" is the appropriate standard and the same as granting CCI the unilateral "*right to control* the [] employees," which is

what is actually required under the first agency element. Pet. 23 (quoting Appx10 (emphases added)). Nor does Entropic rebut arguments that the district court erred in concluding, without any support, that a parent entity manifests consent for an employee to act on its behalf by acknowledging the existence of a subsidiary's employees (Pet. 24), or that a purported employee's "belief" that it works for an entity equates to "consent" to act on an entity's behalf (Pet. 25).

### (c) *Entropic Fails to Demonstrate That CCI Ratified Any Place Of Business in the District*

In its Petition, CCI explained that the district court abused its discretion because it invoked imputation concepts and factual showings that this Court held are insufficient to establish ratification. Pet. 28-31. Entropic does not address these arguments, but contends that the "district court correctly found that" CCI "ratified the physical locations as its own" because the court relied upon "sworn testimony, SEC statements, the lease agreements, . . . and more" to find that Spectrum is not "a distinct thing from" CCI because "'Spectrum' is 'just a brand name.'" Opp. 19-20.

This response, like the district court's decision, squarely contradicts this Court's binding precedent and improperly assumes that CCI and the subsidiaries lack corporate separateness. For starters, the district court made clear it was considering ratification separate from lack of corporate separateness and was

therefore required to presume that CCI and the subsidiaries are separate legal entities.  But the district court did not do so.

Moreover, the district court should have acknowledged that all of the retail stores, websites, and services in the district display the Spectrum name, and not CCI's corporate name.  Instead of concluding that this fact weighed *against* a finding of ratification, as this Court held in *Andra*, the district court did the exact opposite, and found that a sign with a different corporate name from CCI weighed *in favor* of a finding of ratification.  *Compare* Appx15-16, *with Andra*, 28 F.4th at 1290 (that the non-store defendants did not "display their corporate names in the retail locations" is a "factor[]" that "weigh[s] against a finding of ratification"); *Andra*, 28 F.4th at 1290 (rejecting ratification theory, stating a "shared use" of a name "does not detract from the separateness of their businesses" where lack of corporate separateness is not in dispute).  On this basis, the district court erroneously misapplied the law to the facts and reached a patently erroneous result.

Entropic also does not address that the district court erroneously found certain facts support a finding of ratification, notwithstanding this Court's prior rulings that those same facts weigh ***against*** a finding of ratification.  Specifically, those facts include:  (1) a website "points customers to" a subsidiary's locations, and not the parent's locations; (2) "the mere fact that a defendant has advertised

15

that it has a place of business or has even set up an office is not sufficient; the defendant *must actually engage in business* from that location"; and, (3) even a "unified business model" is "insufficient" to show ratification.  Pet. 28-31 (citing *Andra*, 28 F.4th at 1289-90).

Nor does Entropic respond to arguments that a contractual relationship, such as an LLC agreement, is insufficient to prove a place of business is "of the defendant" under the third *Cray* factor.  Pet. 29 (citing *ZTE*, 890 F.3d at 1015).  Similarly, Entropic has no answer for the district court's erroneous reliance on an overlap of corporate officers to find ratification, even though it is a "well established principle" of corporate law "that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership."  Pet. 30 (quoting *Celgene*, 17 F.4th at 1126; *United States v. Bestfoods*, 524 U.S. 51, 69 (1998)).

## IV.    **CONCLUSION**

For these reasons, and for the reasons detailed in its Petition, CCI respectfully requests that this Court issue a writ of mandamus and direct the district court to dismiss this case for improper venue.

Dated:        June 30, 2023            Respectfully submitted,

                                       */s/  Daniel Reisner*
                                       Daniel Reisner
                                       Elizabeth Long
                                       Michael Lynn
                                       Melissa Brown
                                       ARNOLD & PORTER KAYE SCHOLER LLP
                                       250 West 55th Street
                                       New York, New York, 10019-9710
                                       Telephone: (212) 836-8000

                                       *Attorneys for Petitioner*
                                       *Charter Communications, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 23-136

**Short Case Caption:** In re Charter Communications, Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✔] the filing has been prepared using a proportionally-spaced typeface and includes  3,742  words.

[ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 06/30/2023

Signature: /s/ Daniel Reisner

Name: Daniel Reisner

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 30, 2023, I caused a copy of the foregoing document to be served by email on counsel of record and by electronic means via the Court's CM/ECF system on all counsel registered to receive electronic notices.


Dated: June 30, 2023                    */s/ Daniel Reisner*